## Botts v. Fultz, Administrator.

DECEDENTS' ESTATES.—*Claim*—*Parent and Child.*—*Care and Support of Parent.*—*Contract.*—*Measure of Damages*—*Time of Payment.*—Where parents reside in the family of a son, upon an agreement with him that he shall be paid for his services in caring for and supporting them, it is not necessary to the validity of such agreement, that the amount to be

Botts *v.* Fultz, Administrator.

paid or the time of payment shall be agreed upon ; for, in such case, the law implies an agreement to pay the real value of the services, when they shall have all been rendered. And the fact, that the parent provided in part for his own support, does not destroy the effect of such agreement.

SAME.—*Declaration.*—*Estoppel.*—Where one has a legal right to compensation for services in the care and support of his parents, his declaration, after their death, that he would make no charge therefor, does not estop him from afterward setting up a claim for such services.

From the Washington Circuit Court.

*S. B. Voyles* and *H. Morris,* for appellant.

*A. B. Collins, H. Heffron* and *J. A. Zaring,* for appellee.

WORDEN, J.—This was a claim filed by the appellant, against the estate of Charles Botts, deceased, for nursing, boarding and providing for said deceased and his wife, in their lifetime, etc.

Trial by the court; finding and judgment for the defendant.

The case is before us on the evidence, from an examination of which we think a new trial, which was moved for, should have been granted. The appellant is the son of the deceased, Charles Botts. The deceased and his wife, who were old people, had been living by themselves, but, in the spring of 1871, the appellant moved them to his house, and from that time he mainly provided for and took care of them until their respective deaths. The old lady lived only about nine months after being thus removed to her son's ; but the deceased lived until the spring of 1879, when he died at the age of nearly 90 years. The old lady was blind, and the old gentleman more or less decrepit with age. It is apparent from the evidence, that, while they thus lived with the appellant, he bestowed upon them a kindly care, and made them as comfortable as their infirmities would permit.

Without stopping to enquire whether the circumstances were such as to raise an implied promise on the part of the deceased to pay the appellant for thus providing for

and taking care of the old people, we think the evidence shows unequivocally that it was expressly understood between the appellant and the deceased, that the appellant should be paid. Thus, Horace Lannis testified, among other things, as follows : " Charles Botts said he wanted Sanford to be well paid for taking care of them ; he said this before and after they moved to Sanford's. He told Sanford that he should be paid for his trouble, in the presence of his family. He said Sanford should be paid, if it took all he had to pay him. He said this frequently. He always said that he intended that Sanford should have his pay."

John Botts, a son of the appellant, testified that " The old folks said they wanted to come to father's and make it their home, as they could not live by themselves any longer, and they would allow father what it was worth to keep them ; this was while they were living at Canton, before they moved to father's." Several other witnesses testified to statements made by the deceased, to the effect that he desired and expected that the appellant should be paid.

All this evidence was uncontradicted ; and, to our minds, it leads to the irresistible conclusion that there was an express agreement and understanding between the appellant and the deceased, that the appellant was to be paid for thus providing for and taking care of the old people. It was not necessary to the validity of such agreement that the amount to be paid, or the time of payment, should have been expressly agreed upon. The law will imply that the amount should be what the services of the appellant, board, etc., furnished, were reasonably worth ; and the amount would all be due as soon as all the services, etc., were rendered.

It was proved on the part of the defence, that during the time the deceased thus lived with the appellant, and

was taken care of by him, the deceased bought some household supplies that were used by the family. It may be that the estate should be credited with whatever was thus furnished by the deceased; but the furnishing of such supplies by the deceased by no means destroys the effect of the agreement on the part of the deceased that the appellant should be paid.

Nancy Logan, a daughter of the deceased, testified on behalf of the defence, as follows: "About three weeks after the death of my father, I and my sister were coming to town with Sanford, in his wagon; Sanford said he would not charge any thing for keeping the old folks, except what the law allowed him. He said there would be $400 or $450 for each of us, when the estate was settled."

Lydia Early, another daughter of the deceased, testified on behalf of the defence, that "Sanford said that he would make no charge for keeping the old people. He said this after father's death."

Mrs. Masterman, also a daughter of the deceased, testified much the same as the above two last named witnesses.

John Early testified, on behalf of the defence, as follows: "Sanford was at my house one Sunday last summer, and we went out in the orchard and got to talking about the estate. Sanford said he would not charge the estate any thing for taking care of Charles Botts and his wife. He said there would be some money left, after paying the expenses; he did not know how much. That he thought we could settle it without going to law."

The testimony of the appellant was somewhat at variance with that of the witnesses, above named, as to his statements. He said that he did not tell John Early or Mrs. Early, Mrs. Logan or Mrs. Masterman, that he was not going to make any charge against the estate for his trouble.

As to the statements imputed to the appellant, made after the death of the deceased, there is conflict in the evidence.

But, as to the facts on which the case must turn, there is no conflict; that is, as to the fact that the appellant took care of and provided for the old people, and that the deceased, in his lifetime, agreed with the appellant that he should be paid therefor.

The appellant had a legal right to his compensation; and the fact that he stated, after the death of the deceased, that he did not intend to make, or would not make, any charge, if he made such statement, did not destroy his legal right. The statement, if made, was without consideration and not binding as a contract, and does not estop the appellant to set up his legal claim. The case of *Smith* v. *Denman*, 48 Ind. 65, was much like the present.

The judgment below is reversed, with costs, and the cause remanded for a new trial.