*Thomas D. Walpole* and *R. L. Walpole*, for the appellant.

———————◆◆◆———————

## HUNT v. BEESON.

In 1834, *Hunt* laid out the town of *Huntsville*, and on his recorded plat, designated lot No. 4, in square No. 1, as "*James Pugh's* tan-yard and lot," and in a foot note to his plat, added: "Lot No. 4, in square No. 1, is donated by *Miles Hunt, Jr.*, to *James Pugh* for the purpose of erecting a tan-yard on it," and a tan-yard was erected on it, and it remained in the possession and use of *Pugh*, and his grantees, to the time of the institution of this suit.

*Held,* That, under section 2, R. S. 1831, p. 530, the donation thus made and accepted operated as a grant to *Pugh* of the lot named, with condition subsequent.

*Held,* also, that after said property has been used for twenty-four years for the purposes for which it was donated, a failure longer to use it, or its appropriation to any other uses, could not work a forfeiture of the estate.

Conditions subsequent are not favored in law, and are construed strictly, because they tend to destroy estates.

APPEAL from the *Randolph* Circuit Court.

Hunt *v.* Beeson.

WORDEN, J.—This was an action by *Hunt* against *Beeson* to recover possession of lot number 4, in square number 1, in the town of *Huntsville.* Trial; finding and judgment for the defendant.

It appears that in 1834 the plaintiff laid out the town of *Huntsville,* upon his own land, and caused the plat thereof to be duly recorded. The lot in question was marked on the recorded plat as follows: "*James Pugh's* tan-yard lot." In the notes and references to the plat, and recorded with it, is the following explanatory statement: "Lot No. 4, in square No. 1, is donated by *Miles Hunt, Jr.,* to *James Pugh,* for the purpose of erecting a tan-yard on it." It further appears that *Pugh* erected a tan-yard upon the lot, and that it has been used for that purpose from 1834, by *Pugh* and those claiming under him, up to the time that it came into the possession of the defendant, two or three years before the trial, since which time it has been idle and not stocked or used as a tan-yard, though the tan-yard house and vats are still standing. "*Beeson* sometimes talks of starting or stocking the yard, and at others he talks as though he would not." When the donation was made and *Pugh* took possession, the lot was vacant and unimproved. The improvements have been made by *Pugh* and those claiming under him. One of the intermediate proprietors put a house on the lot for a shoe shop and grocery, worth 150 dollars, and additional work has been done. It does not appear that the house thus built has been used as a grocery or shoe shop. The defendant claims by purchase under *Pugh.*

An act in force at the time the plat in question was recorded, provided that every donation or grant to the public or any individual, &c., marked or noted as such on the plat of the town, shall be considered to all intents and purposes as a general warranty to the said donee or donees, grantee or

grantees, for his, her, or their use, for the purposes intended by the donor, &c.  R. S. 1831, p. 530, sec. 2.

We are of opinion, as was found by the Court below, that the donation thus made by the proprietor, and accepted by *Pugh*, operated as a grant to the latter of the lot in question, with condition subsequent, he having a reasonable time in which to comply with the condition.  On this point see *Hayden* v. *Stoughton*, 5 Pick. 528.

It is insisted, however, that the condition is broken whenever the lot ceases to be used as a tan-yard lot.  In other words, that the lot must be used for a tan-yard for all time to come, and whenever it ceases to be so used, it reverts to the donor or his heirs.  We are not of that opinion.  "Conditions subsequent are not favored in law, and are construed strictly, because they tend to destroy estates; and the vigorous exaction of them is a species of *summum jus*, and in many cases hardly reconcilable with conscience."  4 Kent 130.  In *Merrifield* v. *Cobleigh*. 4 Cush. 178, 184, it was said by the Court, in speaking of a condition subsequent, "such a condition, when relied upon to work a forfeiture, is to be construed with great strictness; the demandant shall have his exact legal right and no more."

This rule of construction might authorize the Courts in holding that the condition was forfeited, and the estate made absolute as soon as the tan-yard was erected on the lot, whether it was ever appropriated to the use of a tan-yard or not.  But this is not necessary to be decided in the present case.  Here it appears that the lot came into the possession of the defendant in 1858.  It also appears that it was used for a tan-yard by *Pugh* and those claiming under him from 1834 up to the time when it came into the defendant's possession.  Thus for twenty-four years was the property used for the purposes of a tan-yard.  It may reasonably be supposed that the donor, having in view the future growth, business and pros-

perity of the town, expected that the business of tanning would be carried on upon the lot after the erection of the tan-yard, for an indefinite length of time. This expectation, it seems to us, has been fully met, and the objects and purposes of the donation fully carried out. We do not think that it can be held that a failure to further use the lot as a tan-yard lot, or an appropriation of it to other purposes, can work a forfeiture of the estate.

But it is insisted, that as the Court found that *Pugh* was, by the donation, invested with a title in fee simple upon condition, the judgment should be reversed. It is insisted that *Pugh* took only a life estate. We need not determine this question. There was no proof that *Pugh* was dead, and if the plaintiff sought to recover upon the ground that the estate terminated with the life of *Pugh*, the proof devolved upon him. We see nothing in the record that precludes the plaintiff from bringing his suit whenever the life estate shall have terminated, if a life estate only passed to *Pugh*.

The finding for the defendant is fully sustained by the evidence, hence the judgment must be affirmed.

*Per Curiam.*—The judgment below is affirmed, with costs.

*Jer. Smith,* for the appellant.

*T. M. Browne* and *J. J. Cheney,* for the appellee.