# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

HARDY & AL. v. WILEY & AL.

November 20th, 1890.

RELIGIOUS SOCIETIES—*Powers of church trustees.*—Deed, conveying to trustees land on condition that they build thereon, when they thought fit, a church, and permit it to be preached in by certain persons, and to be used "for such other purposes as should be deemed appropriate and necessary to further the cause of Christ," contained no covenant to re-build, or condition that the land revert, upon failure of the trustees to maintain the church. A church was built thereon, and used as long as it was fit to use: *held*, the trustees may sell the land and invest the proceeds in a parsonage for the same congregation, in connection with a new church on a different lot. But it should be sold in accordance with Code, ch. 64, for the sale of church property.

Appeal from decree of chancery court of city of Richmond, rendered December 17th, 1888, in the suit therein pending in the style of "*Hardy & als.* v. *Wiley & als., Trustees.*" The decree being adverse to complainants, they appealed. Opinion states the case.

*Courtney & Patterson*, for the appellants.

*W. W. Gordon*, for the appellees.

HINTON, J., delivered the opinion of the court.

By deed, dated April 1st, 1856, Catherine Pemberton, then Bethel, conveyed to John B. Morton and others, trustees named therein, and their successors in office, a lot or parcel of ground described as lying and being in the town of Sidney, in the county of Henrico, near the city of Richmond, being a part of lot No. 16 in the plan of said town, fronting fifty-two feet on the north side of Elmwood street, and running back between parallel lines ninety-five feet, "in consideration of the sum of one dollar;" "in trust that they shall erect and build, or caused to be erected and built thereon, at such time as in their judgment it may be judiciously and properly done, a house or place for religious worship and for Sabbath-school purposes, for the use of the members of the Methodist Episcopal Church, South, according to the rules and discipline which, from time to time, may be agreed upon and adopted by the ministers and preachers of the said church, at their General Conference, and in further trust and confidence that they shall at all times forever, hereafter, permit such ministers and preachers belonging to the said church as shall, from time to time, be duly authorized by the General Conference of the ministers and preachers of the said Methodist Episcopal Church, South, or by the Annual Conference authorized by the said General Conference to preach and expound the Word of God therein, and for such other religious purposes as, in the estimation of the said ministers and preachers, and in the estimation of the members of the Methodist Episcopal Church, South, worshiping in said house, shall deem necessary and appropriate to further the cause of Christ and the interests of said church in the community."

Immediately after the execution of this deed, a house of worship was erected on this property, and the same was used continuously as a place of worship in accordance with the provisions of the deed for a period of nearly thirty years. At the expiration of that time the church building became unsafe

and unfit for the purpose for which it had been used, and the site itself being ineligible in view of the large increase in the membership of the church, the trustees determined to sell the building, which was worthless, except for the old material of which it was composed, and to devote the proceeds arising from the sale of it and the lot to the erection of a parsonage to be used in connection with a new and commodious house of worship which had been built in the place of the old one upon more suitable grounds. On the 22nd March, 1883, the same Catherine Pemberton conveyed the now vacant lot to James C. Hardy, as trustee for his wife, Sarah F. Hardy.

Upon this state of facts, Hardy and wife filed their bill charging that the trustees had abandoned whatever rights accrued to them by virtue of the deed of April 1st, 1856; and praying that the court would declare the uses and trusts created by said deed to have failed, and that the beneficial interest therein had resulted to the grantor therein, and passed by the deed of March 22nd, 1883, to James C. Hardy as trustee for his wife, Sarah F. Hardy.

The decision of the Chancellor being adverse to the plaintiffs, the case has been brought before us by an appeal, and it has been argued for the appellants on several points with both ability and earnestness, which, however, will not be noticed, as they are not, in our judgment, necessarily involved in the determination of the case.

The deed of April 1st, 1856, was evidently modelled after the deed in *Brooke* v. *Shacklett*, 13 Gratt., 310, as an examination of that case will show, and we think upon the authority of several cases in this court that such a deed must be deemed valid. *Brooke* v. *Shacklett, supra; Hoskinson* v. *Pusey*, 32 Gratt., 428; *Boxwell* v. *Afflick*, 79 Va., 402.

The obvious purpose of the grantor in executing that deed, was the advancement of the cause of Christianity by the building up a local congregation in that vicinity, and to aid in the

accomplishment of this object she gave, or rather sold, for such is the language of the deed, the lot in question for the small amount of one dollar, upon two trusts or rather conditions; namely, first, that the trustees should build, or caused to be built thereon, at such time as in their judgment it might be judiciously done, a house for religious worship; and second, that they should permit certain persons to preach in said church, and that the trustees should permit the building to be used "for such other purposes as should be deemed appropriate and necessary to further the cause of Christ."

There are no words in the deed that can be properly construed into a covenant to rebuild, nor any indicating a desire on the part of the grantor that the land should revert upon a failure of the trustees to maintain the church.

Under these circumstances we think that the trustees have done all that could be required of them. They built the church in a reasonable time, and allowed it to be used for the purposes contemplated by the deed as long as it was fit for use. Neither do we think it would be a diversion of the property to make sale of it and invest the proceeds in a parsonage for the same congregation, although worshiping at a different place. For the object of the grantor was rather to "further the cause of Christ" than to tie the congregation down to that particular spot. The case is not unlike the case of *Mead* v. *Ballard*, 7 Wall., 290, where it was held that a grant of land "upon the express understanding and condition" that a certain institute of learning, then incorporated, "shall be permanently located upon said land" between the date of the deed and the same day in the succeeding year, was a condition subsequent, but was fulfilled by the location of the institute at the designated place within the required time.

The court is of opinion, however, that the decree of the chancery court is erroneous in holding that the trustees have

the right to sell this property without adding that it must be sold under the provisions and in the manner indicated in chapter 64 of the Code of 1887 for the sale of church property.

The decree will therefore be amended in this respect and, as amended, be affirmed.

LEWIS, P., and FAUNTLEROY, J., dissented.

DECREE AMENDED AND AFFIRMED.