HENRY ECROYD *vs.* JOHN S. COGGESHALL, City Treasurer.

NEWPORT—SEPTEMBER 28, 1898.

PRESENT : Stiness, Tillinghast, and Rogers, JJ.

(1) *Municipal Corporation. Deed. Conditional Estate.*

The habendum in a deed of land to a city contained a provision that "no buildings for any other municipal purpose than that of a city hall shall ever be erected on the granted premises : "—

*Held*, that this restrictive language did not have the effect to create a condition subsequent, and that the title of the city was not liable to be divested on the happening of the event specified.

(2) *Conditional Estate. Deeds.*

In a devise, or purely voluntary conveyance, a conditional estate may be created by any words which declare that the land is given for a certain purpose, or with a certain intention ; but in an ordinary deed for a valuable consideration these words must be joined with others giving a right

to re-enter, or declaring a forfeiture, in a specified contingency, or the grant will not be deemed conditional.

(3)  *Ultra Vires.*

One who deals with a municipal corporation is chargeable with knowledge of any want of power of the latter to act in the premises.

(4)  *Municipal Corporation.    Delegation of Powers.*

A city council appointed a committee to take possession of land to be purchased for the city, "as soon as a deed thereof approved and accepted by the city solicitor shall have been duly recorded." Such deed having been recorded, the city treasurer paid over the price of the land without further action of the council, the tax-paying voters of the city having previously voted in favor of the purchase at the price paid :—

*Held*, that the action of the council was not a delegation of its power to purchase the land and accept the deed, the duty performed by the city solicitor being purely ministerial or administrative.

*Held*, further, that the action, although informal, was a sufficient acceptance of the deed and bound the city.

*Held*, further, that, while the payment of the money, before an appropriation thereof had been made by the city council, was irregular, yet, the payment having been made and the land acquired, the title of the city was not affected by the irregularity.

(5)  *Appropriation by Tax-payers.*

Tax-payers of a city voted in favor of the expenditure of $135,000 for a city hall and the site therefor, which sum was to be raised by a sale of the city's bonds. The sale of the bonds produced $151,136.84, and the city council appropriated the latter sum for the purposes stated :—

*Held*, that the tax-payers had determined the amount to be expended for the city hall and its site, and the city council could not exceed that amount.

*Held*, further, that the appropriation for these purposes of the premium received from the sale of the bonds was illegal.

BILL IN EQUITY to enjoin certain expenditures of public money, and for other relief, based on facts fully stated in the opinion.    Heard on general demurrer to the bill.

TILLINGHAST, J.    The complainant, who is a citizen and tax-payer of the city of Newport, and who sues for himself and also such other citizens and tax-payers of said city as may see fit to join in the suit, brings this bill to enjoin the city treasurer from making a certain alleged illegal expenditure of public funds, and also for other relief. The bill sets out, in brief, that on April 6, 1898, a majority of the tax-paying voters of said city, present and voting, voted in favor

of a proposition,[1] which was duly submitted, for the purchase of a site for, and the erection of, a city hall, and for the expenditure of the sum of $135,000 therefor, which sum was to be derived from the sale of bonds to be issued for that purpose ; and that a plurality of the votes cast were in favor of the site known as the "Bull site," which was to cost $37,500. That subsequently, on the 14th of April, 1898, in pursuance of said action of the tax-payers, the city council of said city passed a resolution appointing a committee to take possession of the land in question "as soon as a deed thereof approved and accepted by the city solicitor shall have been duly recorded, and for the purpose of erecting a city hall thereon under the direction of the city council," &c. That thereupon, without further action by the city council, a warranty deed of the "Bull site" was accepted and approved by the city solicitor and duly recorded, and the sum of $37,500 was paid for said land by the city treasurer out of the funds of the city. That the habendum of said deed contains the following clause, viz. : "But no buildings for any other municipal purpose than that of a city hall shall ever be erected on the granted premises." That by the sale of the bonds authorized to be issued as aforesaid, the city realized the sum of $151,136.84, $16,136.84 of which was received by way of premium on said bonds, which last named sum the city council appropriated for the use of the special committee on the new city hall, if necessary. That the city charter of

---

[1] "Shall the City Council be authorized to purchase a site for a City Hall, to erect thereon a suitable building for the accommodation of the public offices and public officials of the city, and suitably to furnish the same and to expend in such purchase and erection the sum of one hundred and thirty-five thousand dollars, to be derived from sale of bonds of the city to be issued under the direction of the said City Council, of such amounts, at such rate of interest, payable at such times and upon such terms as the said City Council shall prescribe ; provided that all labor of every kind and description, employed in and upon the erection of the said building, shall be that of persons who reside in said city ; and provided that the site to be purchased shall be that site among the following which shall receive more votes than any other site ; and provided further that every elector who votes either 'yes' or 'no' upon this question shall also be entitled (if he see fit) to vote in favor of any one site, by placing a cross in the square opposite the site of his choice."

said city contains the following provision, viz.: " The City Council shall take care that moneys shall not be paid from the treasury unless granted or appropriated ; they shall secure a just and proper accountability, by requiring bond with sufficient penalty and sureties, from all persons entrusted with the receipts, custody, and disbursement of moneys ; and shall fix the bonds of all officers of said city, and in such amounts as they shall see fit. They shall have the care and superintendence of the City Hall buildings, and the custody and management of all city property, with power to let or sell what may be legally let or sold, and to purchase and take in the name of the city such real and personal property, subject to the process of law, as they may think useful to the public interest.' Nothing, however, contained in this charter shall be construed either as giving the City Corporation any banking privileges, or the power to subscribe to any railroad, canal, or any public work whatever, or to do and transact any matter except such as belongs to the legitimate duties of a municipal body within its own province; or as giving power to vote money for any object except for the regular, ordinary, and usual expenses of the city. And any new project or proposition, involving any expenditure of money, exceeding the sum of three thousand dollars in any one year, shall first be voted on and approved by a majority of the electors, qualified to vote on any proposition to impose a tax or for the expenditure of money, voting in ward meetings, legally called for that purpose."

The bill prays for a decree commanding the respondent to immediately proceed to sue for and collect from Henry Bull, the grantor in the said deed, the amount paid for said land, and also that the defendant be perpetually enjoined from spending any money of the city in the erection or construction of a city hall; and in particular that no money shall be spent until a good and unconditional deed of the land in question shall have been made and delivered to the city of Newport and duly accepted by the city council thereof, and also perpetually enjoining the respondent from expending upon said new project in any event any sum in excess of $135,000.

The respondent has demurred to the bill, and the questions raised by the demurrer, which have been argued by counsel, are first, whether the deed in question conveyed an absolute estate in fee simple to the city; second, whether the action of the city council, in connection with the obtaining of the deed, was valid and binding ; and, third, whether the appropriation of the premium received from the sale of said bonds was lawful.

(1)    We think it is clear that the restrictive language, incorporated in the deed as aforesaid, did not have the effect to create a condition subsequent, and hence that the title of the city is not liable to be divested on the happening of the event specified.   There are no words relating to re-entry or forfeiture, but simply a declaration that the land conveyed shall not be used for any other purpose than that specified; and we know of no authority by which such a grant can be held to be on a condition.   *Field* v. *Providence,* 17 R. I. 803; *Greene* v. *O'Connor,* 18 R. I. 60; *Pawtuxet Baptist Society* v. *Johnson,* 20 R. I. 551; *Packard* v. *Ames,* 16 Gray, 327; *Kilpatrick* v. *Mayor, &c., of Baltimore,* 81 Md. 179.   The deed in the recent case of *Faith* v. *Bowles,* 86 Md. 13, contains a statement that the land was conveyed "*for a public schoolhouse, as the property of the schools of said county, and for no other purpose, in fee.*"   The court held that this language did not have the effect to create a condition subsequent.

(2)    There is a marked distinction in the rule as to what language is sufficient to constitute a conditional estate when used in a devise or purely voluntary conveyance and that which is sufficient for such purpose when used in an ordinary deed for a valuable consideration.   In the former case such an estate may be created by any words which declare that the land is given for a certain purpose or with a particular intention; while in the latter case, as said by the court in *Rawson* v. *School District,* 7 Allen, 125, "these words must be conjoined in a deed with others giving a right to re-enter or declaring a forfeiture in a specified contingency, or the grant will not be deemed to be conditional."   The clause in ques-

tion contains no apt or proper words to create a condition. It simply declares that the land shall not be used for any other municipal purpose than that of a city hall. This language, at the most, only has the effect to create a confidence or trust in connection with the land conveyed, or to raise an implied agreement on the part of the grantee to use the land only for the purpose specified. *Greene* v. *O'Connor*, 18 R. I. 56 (60). This much, then, is clear—namely, that the city of Newport has obtained a title to the land in question which cannot be defeated by the happening of the event mentioned in said clause.

(3)    Whether, as charged in the bill, the city council, without any authority therefor, has accepted a deed which contains a limitation upon the right to use the property for other municipal purposes than that of a city hall, we do not now need to decide, and ought not to, because one of the parties in interest—the grantor in the deed—is not a party to the suit. And, moreover, whether the city council had authority to accept the deed in its present form or not, the complainant states no case on this point for an injunction, because, if they had authority to accept it with said objectionable clause, then the bill must fail; and, on the other hand, if they did not have such authority, as argued by the complainant, then, as the grantor was dealing with a municipal corporation, and therefore chargeable with knowledge of their want of power (*Austin* v. *Coggeshall*, 12 R. I. 329; *McAleer* v. *Angell*, 19 R. I. 688), it follows that the objectionable provision in the deed would be simply nugatory and void. Whether, therefore, the city council did or did not exceed their authority in the premises, the bill is demurrable in this particular.

(4)    We think the action of the city council, in connection with the procuring and acceptance of the deed, although informal, was, nevertheless, sufficient in the circumstances to amount to a valid acceptance thereof, and hence to bind the city. It is to be borne in mind that the tax-payers had approved of the price to be paid for the land, and had also selected the site to be purchased. And it is not strange, therefore, that the city council considered the purchase as already consummated with

the exception of obtaining a proper deed of the land, which
duty they very naturally and properly devolved upon the
city solicitor.   This act, however, was in nowise a delegation
on the part of the city council of its power to purchase land
and accept a deed thereof, as argued by counsel for complain-
ant, but was simply an ordinary and prudent step in the
transaction.   The duty performed by the city solicitor was
purely ministerial or administrative.   1 Dil. Mun. Corp. 4
ed. § 96; *Kramrath* v. *Albany*, 53 Hun, 206; *Edwards* v.
*Watertown*, 24 Hun, 426; *Hitchcock* v. *Galveston*, 96 U. S.
341 (348).   It is not to be expected that the members of the
city council are to individually examine and collectively ap-
prove a deed, but that such a duty, requiring as it does special
technical knowledge in the art of conveyancing, will be per-
formed by the law officer of the city.

As to the point made by counsel that no appropriation was
made by the city council for the payment of the agreed price
for the land, we reply that while this is so, yet we think it
is now too late for the complainant to take advantage of this
error.   The money for said purchase, though never formally
appropriated by the city council, as of course it should have
been, has nevertheless already been paid by the city treas-
urer, and by reason thereof the land now belongs to the city.
And we do not think the mere fact that the payment was
irregularly made affects the title or gives the complainant
any standing in a court of equity.   The city council probably
looked upon the action of the tax-payers in the premises as
being tantamount to an appropriation of the amount of the
purchase price aforesaid, and hence that it was only neces-
sary for them to take possession of the land and see to it that
the proper deed thereof was put upon record.   This view
was clearly erroneous, as appears from the provision of the
charter herein before recited, and there is nothing of record
in the case which warranted the city treasurer in paying for
said land.   But, as already stated, it has been paid for, and
so far as appears no one has been or can be harmed by reason
of the irregularity.   As to future expenditures in connection
with the project in hand, the city council will doubtless see

to it that appropriations are regularly and properly made therefor.

(5)    As to the third and last point taken by complainant's counsel, viz., that the appropriation of the amount of the premium received from the sale of the bonds was illegal, we are of opinion that his position in this regard is correct. The tax-payers by their vote have expressly determined what sum shall be expended for a city hall, including the purchase of the site therefor, and it is not competent for the city council or any committee thereof to exceed said sum. The mere fact that the amount appropriated was derived from the sale of the city hall bonds can of course make no difference. Said amount is simply money in the treasury belonging to the city and doubtless available for ordinary purposes, but it cannot be used for any " new project " without the express authority of the tax-payers.

The argument of the city solicitor that the site for a city hall having been purchased, the project of building a city hall thereon is no longer a " new project " within the meaning of the charter, and hence that it is competent for the city council to appropriate said sum to be used in connection therewith, is so manifestly fallacious as to require no serious consideration. The project of erecting a city hall can hardly be treated as an old one before the building is begun. He also argues that this additional sum will not be used unless it is necessary. Probably not. But in view of the fact that it lies with the tax-payers to determine what amount is necessary, and also in view of the further fact that they have already determined that question, it is not competent for the city council to review their decision.

As the demurrer in this case is general, and as the bill clearly states a case for an injunction as to the expenditure of the amount of the premium received from the sale of the bonds aforesaid, the demurrer must be overruled.

Demurrer overruled.

*Charles Acton Ives*, for complainant.

*J. Stacey Brown, City Solicitor of the City of Newport*, for respondent.