LUCAS et al. v. NEW YORK, N. H. & H. R. CO.

(Circuit Court of Appeals, Second Circuit. April 21, 1904.

No. 94.

1. COVENANTS—CONSTRUCTION—PERFORMANCE.

Defendant contracted with plaintiffs' predecessor in title that, in consideration of his dedicating a strip of land to a village for the making of a roadway designated as "Depot Place," defendant, when it changed its passenger station, would make suitable entrance ways to its station grounds, with suitable roadways and sidewalks, and continue such Depot Place eastward. This the railroad did, but shortly after the dedication the village became a municipal corporation, and thereafter so changed the grade of an avenue at the point where the continuation of Depot Place into its grounds joined the same that the avenue was raised about five feet above the surface of the driveway. The city then built a retaining wall on the easterly side of the avenue, obstructing the entrance to Depot Place, and depriving plaintiffs of the driveway, whereupon defendant opened a different entrance to its grounds. *Held*, that defendant's covenant did not bind it to maintain a permanent entrance and roadway, and defendant, having maintained the same until the grade of the adjoining street was changed, was not liable for breach thereof.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a direction of a verdict in favor of the defendant by the United States Circuit Court for the Southern District of New York.

O. D. Tompkins, for plaintiffs in error.

Edwin E. Sprague, for defendant in error.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The plaintiffs herein, as successors in title of one Charles Nettleton, brought this action to recover damages for an alleged breach of contract, based upon the following facts:

In April, 1891, said Nettleton, plaintiffs' predecessor in title, being the owner of a strip of land adjacent to the land of defendant, entered into a contract with defendant, whereby it was provided that Nettleton should dedicate to the village of Mt. Vernon, for highway purposes, a strip of his land varying in width from 26 feet to 33 feet, and that defendant should dedicate to said village for like purposes a strip of its adjacent land sufficient to make altogether a roadway 40 feet wide, to be designated as "Depot Place." Said contract also provided as follows:

"Said railroad company, if and when it changes the present site of its passenger station at Mount Vernon, will make suitable entrance ways to its station grounds, with suitable roadway and sidewalks in continuation eastwardly of its said Depot Place."

At the trial the following stipulation was entered into between the parties:

"That said dedications were made by a suitable instrument duly acknowledged and recorded in the office of the register of Westchester county on the 18th day of November, 1897, after said railroad company had changed the grade and line of its tracks and the site of its passenger station as they ex-

isted on the 15th day of April, 1891, and that said dedications were duly accepted by the city of Mt. Vernon by a resolution of the common council of said city passed on or about the 21st day of December, 1897. That, in accordance with article 6 of said contract, said railroad company, when it changed the site of the passenger station at Mt. Vernon as it existed on April 15, 1891, made suitable entrance ways to said station grounds, with suitable roadways and sidewalks, in continuation eastwardly of said Depot Place."

Shortly after said dedication the village of Mt. Vernon became a municipal corporation, and in 1898 it changed the grade of Third avenue at the point where the driveway in continuation of Depot Place into defendant's grounds joined Third avenue so that the surface of said avenue was raised about five feet above the surface of the driveway. The city of Mt. Vernon built a retaining wall on the easterly side of said avenue, and thus obstructed the entrance to Depot Place, and deprived plaintiffs of their driveway. The defendant refused to grade the continuation or driveway across its land to Depot Place, but built a fence on top of said retaining wall, and opened another entrance to its grounds a short distance north of the point where the former entrance joined Third avenue.

The court, in directing a verdict for defendant, held that, in view of the decisions in the federal courts, the defendant company was not required to restore suitable roadways and entrance ways once made in conformity with the terms of a contract when they had been disrupted by local authority.

The arguments in support of plaintiffs' assignments of error, considered together, are to the effect that in the construction of said contract the court should consider what must have been the mutual intention of the parties, namely, that the roadway and entrance should be permanent, and must therefore construe the contract as one, not only to make, but to forever maintain, said entrance and driveway. Inasmuch, however, as there is no ambiguity in the terms of the contract, there is no occasion for the application of the doctrine of construction, and the apparent meaning of the instrument must be regarded as the one which was intended. Schoonmaker v. Hoyt, 148 N. Y. 425, 42 N. E. 1059; Christopher St. R. Co. v. 23d St. R. Co., 149 N. Y. 51, 43 N. E. 538. The case chiefly relied upon by counsel for plaintiffs is Beach v. Crain, 2 N. Y. 87, 49 Am. Dec. 369. But there the covenant sued upon provided that Crain should erect the gate and the Beaches should keep it in repair. The contract further provided that Crain might keep the gate there during his pleasure, and that all the repairs necessary to be made to said gate were to be made by said Beaches. The court held that in these circumstances the covenant was substantially one to keep the gate in repair while it was the pleasure of Crain that it should remain, and that, as covenants to repair have been uniformly considered as importing the duty to rebuild, the Beaches were bound to rebuild in accordance with said rule. But the rule thus stated is limited to actions upon covenants to repair, and has no application to entire contracts. Schell v. Plumb, 55 N. Y. 594.

It is unnecessary to discuss the federal cases cited by counsel for plaintiffs as to the general rule to be applied in the construction and interpretation of a contract, because his contentions, so far as con-

cerns the case at bar, have been disposed of by the Supreme Court of the United States, and two federal Circuit Courts of Appeals have determined the rule to be applied to such contracts in cases involving the precise question here presented. In Texas, etc., Railway Co. v. Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385, the city of Marshall agreed to give to the Texas & Pacific Railway $300,000 in county bonds and 66 acres of land within the city limits for shops and depots; and the company, "in consideration of the donation," agreed "to permanently establish its eastern terminus and Texas offices at the city of Marshall," and "to establish and construct at said city the main machine shops and car works of said railway company." The court held that the contract of the railroad company to permanently establish its eastern terminus and Texas offices at the city of Marshall was satisfied and performed when it established and kept a depot and set in operation the shops and kept them going for a period of eight years and until the interests of the railroad company and of the public demanded the removal of some or all of these subjects of the contract to some other place; and that the words "permanent" or "permanent establishment" do not mean "forever" or "lasting forever." The court further held that such a covenant did not amount to a covenant that the company would never cease to make its eastern terminus at Marshall, and that, whatever might be the changes of time and circumstances of railroad rivalry and assistance, these things alone should remain forever unchangeable; and that such a contract, if not void on the ground of public policy, would be so objectionable as to obstruct improvement and changes, and that such construction should be avoided if possible. To the same effect are the following cases: Mead v. Ballard, 7 Wall. 290, 19 L. Ed. 190; Jones v. Newport News & Mississippi Valley Co., 65 Fed. 736, 13 C. C. A. 95; Texas & Pacific Railway Co. v. Scott, 77 Fed. 728, 23 C. C. A. 424, 37 L. R. A. 94.

In view of the foregoing decisions it is unnecessary to further discuss the contention of plaintiffs. These cases go much further than we are required to go in the disposition of the present case. Here it is to be observed that not only was there no covenant for repairs, or for a permanent location, but that the plaintiffs' predecessor in title unreservedly dedicated to said village his strip of land in order that it, with the adjoining strip dedicated by defendant, should constitute a new highway, to be known as "Depot Place." The agreement as to the entrance to the grounds was independent of said dedication, and dependent upon an event entirely within the control of defendant.

The judgment is affirmed.