SHEETS ET AL. *v*. VANDALIA RAILWAY COMPANY.

[No. 10,235. Filed June 4, 1920. Rehearing denied November 17, 1920. Transfer denied January 7, 1921.]

1. DEED.—*Conditional Estates.*—Conditional estates are either estates upon condition in deed or upon condition in law, the simplest form of an estate upon condition in a deed being where a grantor invests another in fee reserving to himself and his heirs a certain rent on condition that if the rent be not paid he or his heirs may lawfully re-enter. p. 601.

2. DEEDS.—*Words Creating Estates Conditional Under the Common Law.*—Under the common law certain words of themselves make an estate conditional as where a deed is made of lands "upon condition," or "provided always," or "so that" the grantee do some act, in which case the grantee takes an estate upon condition without any other words being added, because these words in themselves contain a condition that the grantor and his heirs may re-enter on the failure of the grantee to perform the condition named in the deed; but the provision that "if it happen" that a thing reserved is not performed, does not make the title to lands conditional when used in a deed from an individual. p. 601.

3. DEEDS.—*Conditional Estates.*—*Conveyance for Specific Purpose.*—The rule that a deed made in express terms for a specific purpose, or in consideration of an act to be done or service rendered, will be interpreted as creating a condition is an exception to the general rule, and is confined to cases where the subject-matter of the grant is in its nature executory, as an annuity to be paid for in services to be rendered, or a right or privilege to be enjoyed, in which cases, if the grantee fails to perform the service, or the enjoyment of the right or privilege, which was the consideration of the deed, is denied, the grantor will be relieved from the further execution of the grant. p. 602.

4. DEEDS.—*Breach of Conditions.*—*Application of the Common Law.*—The tendency of the courts is to moderate the rigors of the common law, in respect to the breach of conditions, upon the principle that the courts ought to relieve against all forfeitures and penalties where compensation can be had. p. 603.

5. DEEDS.—*Construction.*—*Condition Subsequent.*—*Creation.*—A condition subsequent that will defeat an estate created by a deed must be fairly expressed in the deed itself, and the words used must create the condition, as the court will not supply it if the parties fail to express it. p. 603.

6. DEEDS.—*Conditions.—Creation.—Words Used Must Show Intention.*—A condition in a deed may be created by any words which show a clear and unmistakable intention on the grantor's part to create an estate on condition, regard being had to the whole of the deed in which they occur, but the word "condition" need not necessarily be used, but words importing a condition must be employed or plainly inferred from the instrument and the existing·facts.   p. 603.

7. DEED.— *Condition Subsequent.— Construction.—* A condition subsequent, having the effect in case of a breach to defeat estates already vested, is not favored in law, and hence always receives a strict construction, and will not be raised by implication from a mere declaration in the deed that the grant is made for a special and particular purpose unless coupled with words appropriate to make such a condition, and in doubtful cases the courts are disposed to construe language as creating a trust or covenant rather than a condition.   p. 603.

8. COVENANTS.— *Words Creating.— Construction.—* In order to construe words as a covenant, it is not necessary that they shall be precise, or in any particular form.   p. 605.

9. DEEDS.— *Covenants.— Conditions Subsequent.— How Determined.*—In determining whether a clause in a deed was intended as a condition or only as a covenant, the court will look first to the language used to express the intent, and if it is clear and explicit it will control, but, if it is indefinite and ambiguous, the court may then consider the circumstances under which the deed was executed and the conditions surrounding the parties which may be presumed to have influenced their conduct in order to ascertain their intention. p. 615.

10. DEEDS.—*Conditions Subsequent.—Breach.—Grantor's Right to Re-enter.*—The intention to create a condition subsequent is most clearly and positively shown by a stipulation in the deed that, upon failure to perform a certain provision therein contained, the deed shall become void, or the estate shall be forfeited, and upon such a stipulation or other language clearly indicating such an intention, the breach of the condition gives the grantor a right to terminate the estate by re-entry after breach.   p. 615.

11. RAILROADS.—*Conveyance of Realty To.—Deed Conditioned on Permanent Location of Depot.—Substantial Compliance.*— Where land was deeded to a railroad company "in consideration of the permanent location of the depot" of the company and a roadway upon the lot conveyed, and there was nothing in the deed showing that grantor had any special interest in having the land used for depot purposes or that he would be

specially benefited by such use, *held*, considering the whole deed, that the conditions therein were substantially complied with by the erection and maintenance of a depot for sixty-five years until its abandonment due to modification of transportation routes, so that grantor's heirs could not maintain an action in ejectment against grantee company. p. 616.

From Marion Superior Court (99,480) ; *Linn D. Hay,* Judge.

Action by Thomas R. Sheets and others against the Vandalia Railroad Company. From a judgment for defendant, the plaintiffs appeal. *Affirmed.*

*Granville W. Browning* and *Miller & Dowling,* for appellants.

*Samuel O. Pickens, Charles W. Moores, R. F. Davidson, Owen Pickens* and *D. P. Williams,* for appellee.

McMAHAN, C. J.—This is a suit against appellee in ejectment and to quiet title to the north 150 feet of block 94 in the city of Indianapolis known as the Terre Haute depot property. The complaint is in four paragraphs, and alleges that on and prior to June, 1849, one William Sheets was the owner in fee simple and in possession of said real estate, and that he on said date conveyed the same by warranty deed to the Terre Haute and Richmond Railroad Company, predecessor of appellee; that the deed conveying said land provided that the same should be used and occupied exclusively for a depot and for no other purpose; that the depot building should be erected on the north part of said premises, and that upon the south part there should be left open a street of sufficient width for all business purposes connected with said road and adjoining property, which street should forever remain open for the use of the public. That part of said deed material for our consideration reads as follows:

"The said party of the first part (William Sheets) for and in consideration of the permanent

location of the depot of said railroad on block 94 in Indianapolis and of the sum of Twenty-Seven Hundred and Fifty Dollars * * * has granted, bargained and sold, and by these presents does grant, bargain, sell, convey and confirm unto the said party of the second part and their successors in office forever, the following described piece of land: (Here follows description.) The property hereby conveyed to be used and occupied by said railroad company exclusively for a depot, and for no other purpose. The building to be erected on the north line of said conveyed premises upon the same along the south line thereof to be left open, a street of sufficient width for all business purposes connected with said road and adjoining property which is forever to remain open for the use of the public.

"To have and to hold the above described premises with all the rights, privileges and appurtenances to the same belonging to the said party of the second part and to their successors in office forever."

It is alleged in the complaint that, while said deed recited a money consideration as having been received by said William Sheets, there was in fact no money or property paid or delivered by the grantee or anyone else as a consideration in whole or in part for said conveyance, but that said recital of a consideration of $2,750 was wholly false; that the grantee in said deed entered into immediate possession of said real estate in June, 1849, and built a railroad depot thereon in compliance with the requirements and conditions in said deed, and opened on the south part of said depot a teamway, which teamway remained open for use until sometime in April, 1915, when the appellee tore down and removed said depot building and wholly discontinued the use of said premises as a depot; that the elevated tracks of the Union Railway Company are now located on and over the whole of said land at a height of about sixteen feet above the level of the surrounding property, and which

renders it impossible for said property to be used for depot purposes; that, by reason of said elevation and the location of said elevated tracks on said property, said roadway has been destroyed and abandoned, and access by the public to said property rendered impossible.

It is further alleged that the conditions upon which said property was conveyed to appellee's predecessor in title have been broken, and that the title to said property has reverted to and revested in appellants, who are the heirs at law of said William Sheets who died in 1872. A demurrer was sustained to each paragraph of the complaint, and judgment rendered against appellants that they take nothing.

Appellants contend that the deed from William Sheets conveyed said property upon condition that the grantee therein should permanently locate a depot and roadway thereon, and that said property be used exclusively for depot purposes, and said roadway forever maintained as such in connection with said depot. The questions for our consideration are: Does said deed contain a condition subsequent, and, if so, has there been a breach of such condition?

Conditional estates are of two kinds, that is, they are either estates upon condition in deed, or upon condition in law. The most simple form of an estate upon condition in deed is where a man invests another in fee reserving to himself and his heirs a certain rent on condition that if the rent be not paid it shall be lawful for the grantor or his heirs to re-enter. Many of the earlier cases involved leases and estates of this character.

Under the common law there are certain words, which by virtue of themselves make an estate conditional; thus, if a deed be made of certain lands "upon condition" that the grantee do some act, or "provided always" that the grantee do or cause

some act to be done, or "so that" the grantee shall do or cause some act to be done, the grantee takes an estate upon condition without any other words being added, because these words in themselves contain a condition that the grantor and his heirs may re-enter. And if the grantee fails to perform the condition, the grantor or his heirs may re-enter. The words, "if it happen" that a thing reserved is not paid or performed, will make an estate conditional when used in a grant from the state or when used in a will, but, when used in a deed of an individual, these words do not make the title in the lands conditional. "But such words" says the court in *Rawson* v. *Uxbridge* (1863), 7 Allen (Mass.) 125, 83 Am. Dec. 670, "do not make a condition when used in deeds of private persons. If one makes a feoffment in fee *ea intentione, ad effectum, ad propo-situm,* and the like, the estate is not conditional, but absolute, notwithstanding. (Citing authorities). These words must be conjoined in a deed with others giving a right to re-enter or declaring a forfeiture in a specified contingency, or the grant will not be deemed to be conditional."

It is sometimes said that if a deed is made in express terms for a specific purpose, or in consideration of an act to be done or service rendered, it will be interpreted as creating a condition. But this is an exception to the general rule, and is confined to cases where the subject-matter of the grant is in its nature executory; as an annuity to be paid for in services to be rendered or a right or privilege to be enjoyed. In such cases, if the grantee fails to perform the service, or the enjoyment of the right or privilege which formed the consideration of the deed be denied, the grantor will be relieved from the further execution of the grant.

The tendency of the courts is to moderate the rigors

of the common law, in respect to the breach of conditions, upon the principle that the court ought to relieve against all forfeitures and penalties, where a compensation can be had. A condition subsequent that will defeat an estate created by a deed must be fairly expressed in the deed itself. The words used must create the condition. The court will not supply it, if the parties fail to express it. The deed must speak for itself. A condition, however, may be created by any words which show a clear and unmistakable intention on the part of the grantor to create an estate on condition, regard being had to the whole of the deed in which they occur. The word "condition" need not necessarily be used, but words importing a condition must be used, or plainly inferred from the instrument, and the existing facts. *Sumner* v. *Darnell* (1891), 128 Ind. 38, 27 N. E. 162, 13 L. R. A. 173.

The true rule is that "conditions subsequent, having the effect in case of a breach to defeat estates already vested, are not favored in law, and hence always receive a strict construction." 2 Devlin, Deeds (3d ed.) §970. A condition subsequent will not be raised by implication from a mere declaration in the deed that the grant is made for a special and particular purpose, without being coupled with words appropriate to make such a condition. In doubtful cases the disposition of the courts is to construe language as creating a trust or covenant rather than a condition. *Thompson* v. *Hart* (1909), 133 Ga. 540, 66 S. E. 270; *Kilpatrick* v. *Mayor, etc.* (1895), 81 Md. 179, 31 Atl. 805, 48 Am. St. 509, 511, 27 L. R. A. 643; *Ecroyd* v. *Coggeshall* (1898), 21 R. I. 1, 41 Atl. 260, 79 Am. St. 741; *Faith* v. *Bowles* (1897), 86 Md. 13, 37 Atl. 711, 63 Am. St. 489; *Chicago, etc., R. Co.* v. *Titterington* (1892), 84 Tex. 218, 19 S. W. 472, 31 Am. St. 39.

As said by the court in *Post* v. *Weil* (1889), 115 N. Y. 361, 366, 22 N. E. 145, 5 L. R. A. 422, 12 Am. St. 809: "Mere words should not be and have not usually been deemed sufficient to constitute a condition, and to entail the consequences of forfeiture of an estate; unless from the proof such appears to have been the distinct intention of the grantor and a necessary understanding of the parties to the instrument. Nor should the formal arrangement of the words influence us wholly in determining what the clause was inserted to accomplish; but in this, as in every other case, our judgment should be guided by what was the probable intention; viewing the matter in the light of reason." The deed in the case just cited conveyed and warranted the fee of the premises free of incumbrances, but with the following provision in the habendum clause, viz.: "'Provided always, and these presents are upon this express condition, that the aforesaid premises shall not, nor shall any part thereof, or any building or buildings thereon erected or to be erected, be at any time hereafter used or occupied as a tavern or public house of any kind.'" The court, in holding that the deed did not create a condition subsequent but a covenant, at page 369, said: "Although the words of the clause in question are apt to describe a condition subsequent reserved by a grantor, we are in no wise obliged to take them literally. In the consideration of what, by the use of these words, was imported into the conveyance, we are at liberty to affix that meaning to them, which the general view of the instrument and of the situation of the parties makes manifest. Whether they created a condition, or a covenant, must depend upon what was the intention of the parties; for covenants and conditions may be created by the same words."

In order to construe words as a covenant, it is not necessary that such words shall be precise, or in any

particular form. In 2 Bacon's Abridgment

8. (Cov. A) 522 it is said: "The law does not seem
to have appropriated any set form of words,
which are absolutely necessary to be made use of in
creating a covenant." It is said in 1 Sheppard's Touch-
stone 162 that: "There needs not * * * be formal
* * * words, as covenant, promise, and the like, to
make a covenant on which to ground an action of cove-
nant; for a covenant may be had by any other words."
Or, as said by Chancellor Kent, 4 Kent's Commentaries
(14th ed.) 152: "Whether the words amount to a con-
dition, or a limitation, or a covenant, may be matter of
construction, depending on the contract. The intention
of the party to the instrument, when clearly ascertained,
is of controlling efficacy: though conditions and limita-
tions are not readily to be raised by inferences and
argument. * * * The distinctions on this subject
are extremely subtle and artificial, and the construction
of a deed, as to its operation and effect, will, after all,
depend less upon artificial rules than upon the applica-
tion of good sense and sound equity to the object and
spirit of the contract in a given case."

The deed in *Rawson* v. *Uxbridge, supra,* was made in
consideration of love and affection, "for burying place
forever." The court, in holding that it was not a grant
on condition subsequent, said: "But ordinarily the
failure of the consideration of a grant of land, or the
nonfulfillment of the purpose for which a conveyance
by deed is made, will not of itself defeat an estate. The
reason for this distinction between the two classes of
cases is, as stated by Coke, 'that the state of the land is
executed and the annuity executory.' * * * We be-
lieve there is no authoritative sanction for the doctrine
that a deed is to be construed as a grant on a condition
subsequent solely for the reason that it contains a clause
declaring the purpose for which it is intended the

granted premises shall be used, where such purpose will not enure specially to the benefit of the grantor and his assigns, but is in its nature general and public, and where there are no other words indicating an intent that the grant is to be void if the declared purpose is not fulfilled." See, also, *Horner* v. *Chicago, etc., R. Co.* (1875), 38 Wis. 165, 175.

Referring briefly to the Indiana cases cited by appellants in support of their contention, *Hefner* v. *Yount* (1847), 8 Blackf. 455; *Throp* v. *Johnson* (1852), 3 Ind. 343; *Leach* v. *Leach* (1853), 4 Ind. 628, 58 Am. Dec. 642; *Doe* v. *Cassiday* (1857), 9 Ind. 63; *Leach* v. *Leach* (1858), 10 Ind. 271; *Petro* v. *Cassiday* (1859), 13 Ind. 289; *Boone* v. *Tipton* (1860), 15 Ind. 279; *Rush* v. *Rush* (1872), 40 Ind. 83; *Lindsey* v. *Lindsey* (1874), 45 Ind. 552; *Cory* v. *Cory* (1882), 86 Ind. 567; *Copeland* v. *Copeland* (1883), 89 Ind. 29; *Richter* v. *Richter* (1887), 111 Ind. 456, 12 N. E. 698; *Lindsay* v. *Glass* (1889), 119 Ind. 301, 21 N. E. 897; *Cree* v. *Sherfy* (1894), 138 Ind. 354, 37 N. E. 787; *Tomlinson* v. *Tomlinson* (1904), 162 Ind. 530, 70 N. E. 881; and *Huffman* v. *Rickets* (1916), 60 Ind. App. 526, 111 N. E. 322, are cases where the conveyances were made upon condition that the grantee should furnish support for the grantor during life. Such transactions are placed in a class by themselves and enforced without reference to the form or phraseology of the writing by which they are expressed, or whether by the strict letter of the law a forfeiture is expressly provided for, and are not applicable here.

In *Hankins* v. *Lawrence* (1846), 8 Blackf. 266, the title had been obtained by condemnation. *Evansville, etc., R. Co.* v. *Meeds* (1858), 11 Ind. 273, was an action on a promissory note. *Vaughn* v. *Stuzaker* (1861), 16 Ind. 338, was a case where the title to the real estate had been conveyed for a public street. *Thompson* v. *Thompson* (1857), 9 Ind. 323, 68 Am. Dec. 638, was an

action to quiet title on the theory that there had been a breach of a condition subsequent. The deed had been destroyed or lost and the contents not proved. In *Heaston* v. *Board, etc.* (1863), 20 Ind. 398, it was held that the provisions of the deed created a covenant, and not a condition. In *Ellis* v. *Elkhart Car Works Co.* (1884), 97 Ind. 247, 252; *Carbon Block Coal Co.* v. *Murphy* (1885), 101 Ind. 115; *Elkhart Car Works Co.* v. *Ellis* (1888), 113 Ind. 215, 15 N. E. 249, and *Royal* v. *Altman & Taylor Co.* (1888), 116 Ind. 424, 19 N. E. 202, 2 L. R. A. 526, the deeds in question expressly provided that the title was to be held on condition, and provided for re-entry in case of a breach of the conditions.

In *Midland R. Co.* v. *Fisher* (1890), 125 Ind. 19, 24 N. E. 756, 8 L. R. A. 604, 21 Am. St. 189, and *Lake Erie, etc., R. Co.* v. *Priest* (1892), 131 Ind. 413, 31 N. E. 77, the provisions of the deeds contained a covenant to fence. No question concerning a condition subsequent was presented to or considered by the court. In *Preston* v. *Bosworth* (1899), 153 Ind. 458, 55 N. E. 224, 74 Am. St. 313, there was a condition subsequent named in the deed, and it was expressly provided that "if said well shall be at any time abandoned, the title shall at once revert to and vest in the grantors as heretofore held by them; * * *." In *Clark* v. *Holton* (1877), 57 Ind. 564; *Gadbury* v. *Ohio, etc., Gas Co.* (1904), 162 Ind. 9, 67 N. E. 259, 62 L. R. A. 895, and in many of the cases cited involving support, the words of the deeds are not set out. In six of the cases cited, the deeds expressly provided for re-entry in case of breach. *Scott* v. *Stipe* (1859), 12 Ind. 74, and *Hunt* v. *Beeson* (1862), 18 Ind. 380, are not well reported cases and were wrongfully decided on the authority of *Hayden* v. *Stoughton* (1827), 5 Pick. (Mass.) 528, in which case there were technical words of condition—a fact which

the court undoubtedly overlooked. *Board, etc.* v. *Young* (1893), 59 Fed. 96, 8 C. C. A. 27. The cases of *Sinclair* v. *Comstock,* Harr. Ch. Rep. (Mich.) 404, and *Brigham* v. *Shattuck* (1830), 10 Pick. (Mass.) 306, cited in the Scott case, are not in point and do not support the proposition to which they are cited. The language used in the deed in the Scott case is not set out, but the court in the opinion said: "But the grant in this case was not only in trust; it was also upon a condition subsequent that the church should, within a reasonable time, be erected upon the lot, and forever thereafter be used as a house of worship, pursuant to the intention of the grantor."

In the Hunt case, while the court held that the conveyance or donation operated as a grant upon condition subsequent, it also held that, after the property had been used twenty-four years for the purposes for which it was donated, a failure to longer use it, or its appropriation to other uses, would not work a forfeiture of the estate.

In *Indianapolis, etc., R. Co.* v. *Hood* (1879), 66 Ind. 580, real estate had been conveyed to the railroad company "for and in consideration of the permanent location and construction of the depot of said railroad" thereon. The railroad company took possession under such deed, erected a depot thereon and continued to use the same as a depot for a period of eighteen years, when it built another depot on different land, and ceased to use the land described in the deed for depot purposes. The court held that the railroad company took said lots upon the condition subsequent that it would permanently locate and construct its depot thereon, and that this condition was broken by the removal of the depot therefrom. On a casual reading it would seem as if this case was decisive of the case at bar, but, after having given it careful consideration, we

are of the opinion that, in so far as the court held that the deed created an estate upon condition subsequent, it was correctly decided, but the question as to whether or not the erection of the depot building and the occupancy thereof by the railroad company for eighteen years was a compliance with the condition expressed in the deed does not appear to have been called to the attention of the court. The holding of the court that the removal of the depot worked a forfeiture of the estate is not supported by the authorities cited by the court. The holding of the court on that question is contrary to the holding in *Hunt* v. *Beeson, supra,* and has been discredited, if not virtually overruled as to that proposition, in *Jeffersonville, etc., R. Co.* v. *Barbour* (1883), 89 Ind. 375, and *Sumner* v. *Darnell, supra.* The deed in the case of *Jeffersonville, etc., R. Co.* v. *Barbour, supra,* was made " 'for and in consideration of the sum of five dollars,' " and provided that a failure to erect buildings and occupy the ground " 'for the use and purpose above mentioned, then and in that case the above specified ground shall revert back to the donors.' " It was there held that the erection of the buildings and their use for depot purposes for thirty-three years was a substantial compliance with the condition.

In *Sumner* v. *Darnell, supra,* a conveyance was made to the commissioners of Wayne county in May, 1818, " 'in consideration of the seat of justice having been permanently established in the town of Centerville.' " A courthouse was erected on the property described in the deed in 1820 and was used by the county until 1873, when the county seat was removed to the city of Richmond, where a new courthouse was erected, and the real estate on which the old courthouse in Centerville had been located was sold by the commissioners. The court, after holding that there was not a condition subsequent,

said: "It is questionable whether the appellants would be entitled to a recovery if the deed contained a condition subsequent. It appears from the finding that the county seat remained at Centreville from 1817 to 1873, a period of fifty-six years, and that this suit was brought more than seventy years after the location of the seat of justice at Centreville. It may fairly be presumed that the grantor, at the time he executed the deed to the commissioners, owned other property, the value of which he expected would be enhanced by the location of the county seat, or that he had other interests to be subserved thereby. If so, we may also infer that he received, during his lifetime and while a resident of Wayne county, the substantial benefit of his donation." In *Higbee* v. *Rodeman* (1891), 129 Ind. 244, 28 N. E. 442, the use of property for thirty years was held a substantial compliance with a condition subsequent. In *Mead* v. *Ballard* (1868), 74 U. S. 290, 19 L. Ed. 190, it was held that the condition in a deed calling for a permanent location of an institution of learning was fulfilled when the officers in good faith passed a resolution fixing the place where the building was to be erected.

Seventeen years' maintenance of a public station—"until the exigencies of business, the convenience of the public and the welfare of the railroad demand its removal"—was held in *Maryland, etc., R. Co.* v. *Silver* (1909), 110 Md. 511, 73 Atl. 297, to constitute a fair compliance with a covenant to make and maintain a passenger and freight station on a specified lot of land conveyed to it for that purpose.

In *Stansbery* v. *First M. E. Church* (1916), 79 Ore. 155, 154 Pac. 887, it was held that where a deed contained a restriction that the land conveyed was to be used for " 'the purpose of a parsonage, church, etc.,' " the consideration for such conveyance was that the grantee was to so use the land, and user in conformity

with such recital for more than sixty years fully satis-
fied such obligation, because the rule is firmly estab-
lished that a long-continued use operates as full pay-
ment, the court saying: "If it be conceded that the
transfer was made in consideration of the grantee
using the land for 'the purpose of a parsonage, church,
etc.,' then the price for the deed has been paid and the
obligation fully satisfied by using the land for church
and parsonage purposes for more than 60 years, because
the rule is firmly established that a long-continued use
operates as full payment." Citing *Sumner* v. *Darnell,
supra; Hunt* v. *Beeson, supra; Higbee* v. *Rodeman,
supra; Mead* v. *Ballard, supra.*

In *Harris* v. *Shaw* (1851), 13 Ill. 456, land was con-
veyed on condition that the county seat should be "per-
manently located upon it." The location was made ac-
cordingly with that intent, but some years later the
county seat was removed. The grantor sued to recover
the land. The court said it was no part of the contract
that the county seat should remain forever on the prem-
ises. The grantor must be presumed to have known
that the legislature had the power to remove it at pleas-
ure, and that he must be held to have had in view, at
least, the probability of such a change when he made the
deed.

The Supreme Court of the United States, in *Newton*
v. *Commissioners* (1879), 100 U. S. 548, 25 L. Ed. 710,
in discussing the words "permanently established,"
said: "It will be observed that there is nothing said
about the county seat *remaining,* or being *kept,* at Can-
field *forever,* or *for any specified time,* or 'permanently.'
At most, the stipulation is that it shall be *considered
as permanently established there* when the conditions
specified are fulfilled. * * * So the county seat
was permanently established at Canfield when it was
placed there with the *intention* that it should remain

there. This fact, thus complete, was in no wise affected by the further fact that thirty years later the State changed its mind and determined to remove, and did remove, the same county seat to another locality. It fulfilled at the outset the entire obligation it had assumed. It did not stipulate *to keep* the county seat at Canfield perpetually, and the plaintiffs in error have no right to complain that it was not done." The deed in *Hardy* v. *Wiley* (1890), 87 Va. 125, 12 S. E. 234, conveying the land to trustees on condition that they build thereon a church to be used " 'for such other purposes as should be deemed appropriate and necessary to further the cause of Christ,' " contained no covenant to rebuild, or condition that the land revert upon failure of the trustees to maintain the church. The church was built thereon and used as long as it was fit for use (about thirty years). The court held that the condition in the deed was fulfilled, and that the church had the right to sell the property.

A case in point on this proposition is *Texas, etc., R. Co.* v. *Marshall* (1890), 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385, wherein relief in equity was sought by the city of Marshall, to enforce an agreement to permanently establish the eastern terminus of the company's line of railroad at Marshall, and to construct and maintain there the main carworks and machine shops, in consideration of a large bonus given to the company by the city. The evidence showed the railroad company had in fact established the eastern terminus of its line at Marshall, and had located its shops there. The trial court found that the contract was duly executed by both parties. The terminus and shops remained at Marshall for eight years, when the terminus was changed to another place, and parts of the shops removed. The point of law involved was whether, in view of the proviso in the subscription agreement that the

terminus should be established permanently at Marshall, the company had the right to change it, and move its shops after eight years. It was held that, if the eastern terminus and the shops and carworks of the railroad company were established at Marshall, "with the purpose that it (i.e., this location of them) should be permanent," the contract was performed by the company, and that it had not covenanted to keep up the arrangement forever, regardless of the needs entailed by changes which might occur in the course of time. That "permanent" did not mean forever. The opinion said, *inter alia:* "It appears to us, so far from this, that the contract on the part of the railroad company is satisfied and performed when it establishes and keeps a depot, and sets in operation car works and machine shops, and keeps them going for eight years, and until the interests of the railroad company and the public demand the removal of some or all of these subjects of the contract to some other place. This was the establishment at that point of the things contracted for in the agreement. It was the fair meaning of the words 'permanent establishment,' as there was no intention at the time of removing or abandoning them." In *Whalen* v. *Baltimore, etc., R. Co.* (1908), 108 Md. 11, 69 Atl. 390, 129 Am. St. 423, 17 L. R. A. (N. S.) 130, and id. (1912), 112 Md. 200, 76 Atl. 166, it was held that an agreement to maintain a turn-out and siding was not binding after a lapse of fifty-nine years and change of location of railroad. So in *Jones* v. *Newport News, etc., Co.* (1895), 65 Fed. 736, 741, 13 C. C. A. 95, the court held that an agreement to build a switch does not imply that it shall be perpetual. While in *Texas, etc., R. Co.* v. *Scott* (1896), 77 Fed. 726, 730, 23 C. C. A. 424, 37 L. R. A. 97, maintaining a depot for thirty-six years was held virtually a compliance with the contract. See, also, *Sullivan* v. *Detroit, etc., R. Co.* (1904), 135 Mich.

661, 98 N. W. 756, 64 L. R. A. 673, 106 Am. St. 403; *Louisville, etc., R. Co.* v. *Cox* (1911), 145 Ky. 667, 141 S. W. 389; *Lucas* v. *New York, etc., R. Co.* (1904), 130 Fed. 436, 64 C. C. A. 638; *St. Louis, etc., R. Co.* v. *Houck* (1906), 120 Mo. App. 634, 97 S. W. 963, 968; *Albright* v. *Albright* (1911), 153 Iowa 397, 133 N. W. 737; *Union Stockyards Co.* v. *Nashville Packing Co.* (1905), 140 Fed. 701, 706, 72 C. C. A. 195.

Appellants cite *Carlisle* v. *Terre Haute, etc., R. Co.* (1855), 6 Ind. 316, as being a valuable precedent in this case. It appears from the briefs filed herein (although not alleged in the complaint) that the $2,750 mentioned in the deed from William Sheets was made up of notes given to the Terre Haute and Richmond Railroad Company by various citizens of Indianapolis in consideration of said railroad erecting its depot upon the land now in controversy. The validity of one of these notes was involved in the Carlisle case. It appears that the note was made payable to the Terre Haute and Richmond Railroad Company when it commenced the construction of its depot on the Sheets lot. Subsequently the charter of the railroad was altered so that the line of the road was limited to the distance between Terre Haute and Indianapolis, and that part of the line from Indianapolis to Richmond was placed under a different corporation. The court there held that the corporation erecting the depot was a different corporation than the one to whom the note was given and that there could be no recovery. We fail to see how that case can aid appellants in this case. If the reasoning of the court in the Carlisle case be applied in this case we would be justified in holding that the corporation that took possession of the lot and erected the depot was a different corporation than the one named as grantee in the deed and therefore not bound by the provisions or conditions

in the deed.   Such a holding would be disastrous to the contention of appellants.

We do not deem it necessary to further extend this opinion in discussing or attempting to reconcile the many authorities bearing upon conditions in deeds.   As said by this court in the well-considered case of *Brady* v. *Gregory* (1912), 49 Ind. App. 355, 97 N. E. 452: "Conditions subsequent are not favored in law, for the reason that their purpose is to work a forfeiture of vested estates.   Courts are inclined to construe clauses in a deed as covenants rather than conditions, when the language used is capable of such a construction, and where the language used is such as to leave doubt as to whether a condition or a covenant was intended, the doubt should be resolved in favor of holding the clause to be a covenant and not a condition.   *   *   *   In determining whether a clause in a deed was intended as a condition or only as a covenant, the court will look first to the language employed to express the intent.   If the language is clear and explicit it will control, and the court will look no further, but if it is indefinite and ambiguous, the court may then look to the circumstances under which the deed was executed and to the conditions surrounding the parties at the time, which may be presumed to have influenced their conduct for the purpose of ascertaining their intention.   The intention to create a condition subsequent is most clearly and positively shown by a stipulation in the deed, to the effect that upon a failure to perform a certain provision or provisions therein contained, the deed shall become void, or that the estate shall be forfeited.   If a deed contains a stipulation of this character, or if other language is used clearly indicating that the estate granted shall revest in the grantor upon a breach of

certain provisions of the deed, such language indicates an intention to create a condition subsequent, the breach of which gives a right to the grantor to terminate the estate by re-entry after breach of condition. The courts of the various states are practically in accord upon this proposition."

Continuing the court, on page 364, said: "So, where the language of a clause in a deed indicates a purpose simply to define and regulate the use which shall be made of real estate granted, and where it does not appear that such use is for the special benefit of the grantor and his heirs, it will not be construed as a condition subsequent."

There is nothing in the deed under consideration or in the complaint to show that William Sheets had any special interest in having the real estate in question used for depot purposes. There is no allegation that he ever owned any other real estate which would be benefited by such use. Under such circumstance we will not read into the deed any conditions not clearly expressed therein.

Appellee by its demurrer admits that there was no money consideration for the deed, and that the recital relative to the payment of the $2,750 is false. We then have a deed executed in consideration of the permanent location of the depot thereon, or, in other words, upon condition that such depot be permanently located upon such lot. But it does not follow that the appellee was bound to maintain its depot thereon forever. From a careful reading of the whole of the deed, we are of the opinion that the intention of the parties thereto was that the grantee was to locate a permanent depot on the land conveyed, and, so long as such depot was maintained, there would be a roadway of sufficient width to accommodate the business connected with such depot and the adjoining property.

The provision relative to the "street" depended upon the necessities and requirements of the business connected with the railroad and the adjoining property, and not otherwise. It does not appear that such business required any street to be maintained on this particular property. If there is no necessity for such street, the failure to maintain it will not work a forfeiture.

While holding that the conveyance was made upon condition that the grantee therein named should permanently locate its depot upon the land conveyed, we hold that the appellee and its predecessors by erecting and maintaining its depot on the land conveyed for a period of sixty-five years substantially complied with the conditions of the deed. The abandonment of the property for depot purposes forty-three years after the death of the grantor will not authorize his heirs to re-enter upon the property. Such conveyance was undoubtedly made subject to the general exigencies of business and public interest, and the change, modification and growth of transportation routes as this may affect the requirements of the railway company's business. *Railway Co.* v. *Birnie* (1894), 59 Ark. 66, 26 S. W. 528.

There having been a substantial compliance with the provisions of the deed, there was no error in sustaining the demurrer to the several paragraphs of complaint.

Judgment affirmed.