HUMPHREY *v*. JOHNSON ET AL.

[No. 10,440. Filed June 25, 1920.]

1. WORK AND LABOR.—*Mutual Services by Members of Family.—Compensation.—Presumption.*—Where persons dwell together as a family, the presumption is that services rendered for each other are rendered gratuitously, and there is, therefore, no implied agreement to pay for service rendered by one member for another member of the family group. p. 554.

2. WORK AND LABOR.—*Mutual Services by Members of Family.—Presumption that Services Were Gratuitous.—Rebuttal.—Express Agreement.*—An express oral agreement to the contrary is sufficient to rebut the presumption arising from persons dwelling together as a family that services rendered by one member of the family group to another were gratuitous. p. 554.

3. WORK AND LABOR.—*Abandonment of Contract of Hire.—Recovery for Service Rendered.*—The common-law doctrine that, where one abandons the work without a legal excuse, he cannot recover the value of the work done, has been supplanted by the rule that the person making the contract may quit the service specified therein at any time for any reason satisfactory to himself, and then recover the reasonable value of the services rendered, even though the other party be without fault. p. 554.

4. WORK AND LABOR.—*Contract of Hire.—Contract to Care for Aged Persons.—Abandonment.—Recovery for Services Rendered.*—The rule that one abandoning a contract of hire may recover on the *quantum meruit* for services rendered under the contract is peculiarly applicable to contracts to live with and care for aged persons, in view of the personal nature of such contracts. p. 555.

5. WORK AND LABOR.—*Contract of Hire.—Compensation.—Oral Agreement to Convey Land.—Statute of Frauds.*—Where one who agreed to care for an aged couple for life in consideration of an oral agreement that they would convey their land to him abandoned his contract and sought to recover for the services rendered, the rights of the parties were not affected by the statute of frauds, it being in no way involved in the action. p. 556.

From Hendricks Circuit Court; *George W. Brill*, Judge.

Action by Arthur M. Humphrey against George H. Johnson and another. From a judgment for defendants, the plaintiff appeals. *Reversed.*

*Enloe & Goff* and *S. C. Kivett,* for appellant.
*E. M. Blessing* and *Otis E. Gulley,* for appellee.

Statement by DAUSMAN, J.—This action was instituted by appellant against the appellees. It appears from the first paragraph of complaint that in January, 1906, the defendants, George H. Johnson and his wife, Anna Johnson, were aged, in need of care and assistance, and resided on a farm owned by Mr. Johnson. The farm had been neglected, was in a bad state of repair and cultivation, and yielded but little income. The Johnsons desired to live on the farm the remainder of their days, and, because of their advanced age, they were anxious to have some one live on the farm with them and give them such care and attention as they needed in their declining years. Humphrey's wife was the daughter of the defendants. The defendants entered into an oral contract with Humphrey, by the terms of which it was agreed that Humphrey and his wife should live with the defendants and improve the farm, and as compensation for their services the defendants would execute the necessary papers to convey the farm to Humphrey and his wife jointly.

Pursuant to the agreement Humphrey and his wife went upon the farm, made improvements thereon, nursed and cared for the defendants until December 12, 1912, at which time Humphrey's wife died. After her death he continued to reside with the defendants on the farm and to discharge his duties under the contract. In October, 1915, with the consent and at the request of the defendants, he remarried, and brought his second wife into the home to assist in caring for the defendants, under another oral agreement that the original

contract should be performed as if Humphrey's first wife had lived. They continued with the defendants under the agreement until May 29, 1916, at which time they left the farm, because defendants had repudiated the agreement and had ordered them away. The services so rendered, the work done, and the improvements made, were rendered, done, and made at the defendants' special instance and request, are of the reasonable value of $8,000, and the defendants have refused to make compensation.

The amended second paragraph of complaint seeks to recover the value of the same services rendered, work done, and improvements made, but contains no reference to the oral contract nor to any promise to pay therefor.

Answer in denial and plea of payment. Verdict and judgment for the defendants.

The following is a portion of the tenth instruction: "Before the plaintiff can recover any sum in this action he must show by a fair preponderance of the evidence, first, that such an agreement was made; second, that relying upon said agreement, he, or his said wife, or both of them, performed services for defendants not required under his lease, and that said contract and agreement to execute papers by which he and his wife were to become the owners of the said farm after the death of defendants, has been repudiated by them without his consent, and that he at all times was ready and willing to perform his part of said contract."

DAUSMAN, J.—It is conceded that by this action appellant is not seeking specific performance of the parol contract averred in the complaint, nor damages for a breach thereof; but that he is seeking to recover the value of the services rendered, the work done, and the improvements made.

Where persons dwell together as a family, the pre-

sumption is that services rendered for each other are rendered gratuitously; and there is therefore no

1. implied agreement to pay for services rendered by one member for another member of the family group. *Story* v. *Story* (1890), 1 Ind. App. 284, 27 N. E. 573; *James* v. *Gillon* (1891), 3 Ind. App. 472, 30 N. E. 7; *Puterbaugh* v. *Puterbaugh* (1893), 7 Ind. App. 280, 33 N. E. 808, 34 N. E. 611; *Stewart* v. *Small* (1894), 11 Ind. App. 100, 38 N. E. 826; *Jessup* v. *Jessup* (1897), 17 Ind. App. 177, 46 N. E. 550; *Hamilton* v. *Hamilton* (1900), 26 Ind. App. 114, 59 N. E. 344; *House* v. *House* (1854), 6 Ind. 61; *Smith* v. *Denman* (1874), 48 Ind. 65; *Botts* v. *Fultz* (1880), 70 Ind. 396; *Hilbish* v. *Hilbish* (1880), 71 Ind. 27; *Wright* v. *McLarinan* (1883), 92 Ind. 103; *Hinkle* v. *Sage* (1902), 67 Ohio St. 256, 65 N. E. 999; *Martin* v. *Estate of Martin* (1900), 108 Wis. 284, 84 N. W. 439, 81 Am. St. 895.

It is a clear inference, then, that the parol agreement was recited in the complaint for the sole purpose of presenting a state of facts which would rebut the

2. presumption that the services were rendered gratuitously. *Flowers* v. *Poorman* (1909), 43 Ind. App. 528, 87 N. E. 1107; *Schoonover* v. *Vachon* (1889), 121 Ind. 3, 22 N. E. 777.

The common-law doctrine was that, where one makes a contract to work for a definite period of time and then abandons the work without a legal excuse, he can-

3. not recover the value of the work done. But that doctrine has fallen into disfavor and does not now prevail. In our country it has been supplanted by the more humane rule laid down in *Britton* v. *Turner* (1834), 6 N. H. 481, 26 Am. Dec. 713. Appellant could quit the service specified in the contract at any time and for any reason satisfactory to himself, and then recover the reasonable value of the services rendered, even if the appellee were without fault. *Pixler* v. *Nichols*

(1859), 8 Iowa 106, 74 Am. Dec. 298; *McClay* v. *Hedge* (1864), 18 Iowa 66; *Duncan* v. *Baker* (1878), 21 Kan. 99; *Lee & Dolen* v. *Ashbrook* (1851), 14 Mo. 378, 55 Am. Dec. 110; *Lamb* v. *Brolaski* (1866), 38 Mo. 51; *Yeats* v. *Ballentine* (1874), 56 Mo. 530; *Rude* v. *Mitchell* (1888), 97 Mo. 365, 11 S. W. 265; *Fleischmann* v. *Miller* (1889), 38 Mo. App. 177; *Halpin Mfg. Co.* v. *School Dist.* (1893), 54 Mo. App. 371; *Bedow* v. *Tonkin* (1894), 5 S. D. 432, 59 N. W. 222; *Parcell* v. *McComber* (1881), 11 Neb. 209, 7 N. W. 529, 38 Am. Rep. 366; *Hillyard* v. *Crabtree* (1854), 11 Tex. 264, 62 Am. Dec. 475; *Fenton* v. *Clark* (1839), 11 Vt. 557; *Gilman* v. *Hall* (1839), 11 Vt. 510, 34 Am. Dec. 700.

In addition to the reasons stated in *Britton* v. *Turner,* *supra,* there is a special reason why the rule is peculiarly applicable to cases like the one at bar.

4. Where one enters into a contract to live with aged persons, to provide for their wants, to nurse them in sickness, and to care for them in their helplessness, a relation of trust and confidence is created, in which the personal element is of unusual significance. It is essential to the proper performance of such a contract that mutual respect, confidence, sympathy, and kindness shall prevail. If these things are lacking, if aversion, hatred, distrust and discontent should arise, the situation would become intolerable—especially for the aged. It is apparent that where the psychological conditions essential to the proper performance of the contract, as above indicated, do not exist, there is an element of impropriety, not to say danger, in all such contracts, if compensation is made to depend on the continuation of the services until the death of the aged. These considerations constitute an impelling and indisputable reason for holding that either party may abandon the contract arbitrarily, and in that event the only rational standard by which to adjust the rights of the parties is

found in the *quantum meruit*. *Ikerd* v. *Beavers* (1886), 106 Ind. 483, 7 N. E. 326; *Lindsay* v. *Glass* (1889), 119 Ind. 301, 21 N. E. 897.

Appellant's right to recover on the basis of the value of the services rendered, work done, and improvements made, does not depend on his willingness and readiness fully to perform the contract. The tenth instruction violates this principle, and the effect of it is to make nonfulfillment of the contract by him available to the appellee as a bar to his action.

As to some features of the case the evidence is conflicting; but that part thereof which is most favorable to the appellant tends to support all the material averments of his complaint, and he may have been deprived of a recovery by the tenth instruction alone. It affirmatively appears that the instruction is harmful.

5. Counsel have assumed that the statute of frauds affects the rights of the parties, and have discussed that subject in their briefs; but the statute of frauds is not in any manner involved. *Wallace* v. *Long*, (1886), 105 Ind. 522, 5 N. E. 666, 55 Am. Rep. 222.

When all the evidence has been considered, it becomes apparent that in the interest of fairness the appellant should have the right to amend his complaint.

The judgment is reversed, and the trial court is directed to grant a new trial and to permit the pleadings to be amended, if desired.

Enloe, P. J., not participating.