THOMAS WAYNE BRUNNER ET UX. *v.* JERRY TERMAN AND FARMERS LOAN AND TRUST CO. ET AL.

[No. 671A112. Filed December 2, 1971. Rehearing denied January 4, 1972. Transfer denied April 28, 1973.]

*Richard F. Joyce, Kizer and Neu,* of Plymouth, *Joseph R. Roe,* of Columbia City, for appellants.

*William M. Bloom, Bloom & Bloom,* of Columbia City, for appellee, Terman, *Benton E. Gates, Sr., Richard W. Gates,*

*Gates, Gates & McNagny,* of Columbia City, for appellee, Farmers Loan and Trust Company.

LOWDERMILK, J.—This is an appeal of consolidated cases which, by agreement, were consolidated in the trial court and by further agreement were consolidated for the appeal.

We shall refer to plaintiffs-appellants Thomas Wayne Brunner and Lucille Berniece Brunner throughout the opinion as "Brunner"; the defendant-appellee Jerry N. Terman shall be referred to as "Terman"; the defendant-appellee Leola Ann Carter shall be referred to as "Carter" and the appellee Farmers Loan and Trust Company shall be referred to as the "Bank."

In the trial court appellants Brunner were plaintiffs in Cause No. C-68-311 upon their complaint to cancel the deed and quiet title to certain real estate and in that cause appellees Terman and Bank were defendants. Appellants Brunner were defendants in Cause No. C-68-320 and in that cause appellee Bank was plaintiff and the appellees Terman and Carter were defendants. The latter action was to foreclose a mortgage on the same real estate.

The issues were formed by the complaints and answers of these parties in the respective causes and the answer and cross complaint of Terman, defendant-appellee, and the respective answers to such cross complaint. The defendant-appellee Carter was defaulted.

The deed to the real estate in question was from Brunner, parents of Carter nee Terman, to Carter nee Terman and Terman, their son-in-law. The deed was executed and delivered to grantees on July 7, 1961 and recorded on July 17, 1961 in Whitley County.

It was for property 300 feet east and west by 150 feet north and south containing .9 acre, out of a 20 acre tract owned by Brunner and was located next door to the Brunners' home where they resided.

Brunner had built a home on this property around 1958, 59 or 60, in which he had invested $4,000 for materials and for which he made no charge for his labor, as he was a carpenter.

Terman and Carter, while man and wife, moved into the house and without knowledge of Brunner mortgaged the property for $3,500 which was used for drilling and equipping a water well. On September 22, 1965, the mortgage in question, which is being foreclosed, was executed and the balance of the old mortgage, being $2,000, was picked up by the present mortgage, which was originally in the principal amount of $6,000.00. From the last mortgage Terman and Carter received the balance of $4,000 in cash. Seven hundred dollars of this borrowed money was paid on a garden tractor, while part of the balance was used to pay for a sectional, lamp, end tables, stereo combination set, two beds, kitchen table, bookcases, et cetera.

Terman, after moving into the house, installed the furnace and some plumbing and had the well drilled and hooked up the water system, along with some other minor things at the time.

Terman and Carter were later divorced and Brunner took possession of the real estate, which was then owned by Terman and Carter as tenants in common. Subsequently, Carter conveyed her interest to Brunner. Terman's evidence was that the locks on the home had been changed and property had been taken over by Brunner without any demand having been made to Terman for possession, but he did not complain of the lack of demand for a rescission.

The note secured by the mortgage was defaulted and the Bank brought action to foreclose the mortgage. Brunner then brought an action to cancel deed and quiet title to the real estate. Terman filed a cross complaint for partition and asked for an accounting of rents and profits on the real estate from the time that another daughter and son-in-law of Brunner had lived in the property. The evidence disclosed that the other

daughter and son-in-law had paid no rent on the property, but the daughter testified she intended to pay the rent at a later date.

The point of controversy in this case arises from a clause in the deed which states:

"As a part of the consideration for this Deed, Grantees do agree to take care of and assist the above named grantors in case they do need any aid during their respective lifetimes."

After the two cases were combined for trial, without a jury, as evidenced by the pre-trial order, the trial was commenced on November 2, 1970 and judgments entered in the respective cases on the 7th day of January, 1971, which judgments read as follows, to-wit:

"BE IT FURTHER REMEMBERED that afterwards, to-wit: on the 7th day of January, 1971, before the Honorable Edward J. Meyers, Jr., Judge of said court, the following proceedings were had in said cause: C-68-311

The Court having heard the evidence in the cause herein and having read and considered the trial briefs filed by the parties now finds that part of the consideration clause in the warranty deed from Thomas Wayne Brunner and Lucille Berniece Brunner to Jerry N. Terman and Leola Ann Terman dated the 7th day of July, 1961, for the following described real estate: Commencing at the Northeast corner of the North half of the Southeast quarter of the Northeast quarter of Section Nine (9) Township Thirty-one (31) North, Range Eight (8) East, thence running West 300 feet; thence South 150 feet; thence East 300 feet; thence North 150 feet to the place of beginning, which consideration clause reads as follows, 'As part of the consideration for this deed, Grantees do agree to take care of and assist the above named grantors in case they do need any aid during their respective lifetimes,' *did not create a condition subsequent and therefore the Court finds against the plaintiffs on their complaint.* The Court finds for the defendant Jerry N. Terman on his cross-complaint for partition. The Court further finds that on April 22, 1968, Leola Ann Terman, then Leola Ann Carter, quit-claimed her interest in said real estate to the plaintiffs,

Thomas and Lucille Brunner. The Court further finds that the plaintiffs are the owners of an undivided one-half of said real estate described in their complaint and the defendant Jerry N. Terman is the owner of an undivided one-half of said real estate. The Court finds that said real estate cannot be divided without damage to said property and the owners thereof. The Court finds that on September 22, 1965 Jerry N. Terman and Leola Ann Terman mortgaged said real estate to The Farmers Loan & Trust Company, and that said mortgage is a lien upon said real estate. The Court further finds that the plaintiffs improved said real estate in the amount of $1,357.83 and that they are entitled to recover that amount from the proceeds of the sale of said real estate.

IT IS THEREFORE ORDERED AND ADJUDGED by the Court that the following described real estate, to-wit: Commencing at the Northeast corner of the North half of the Southeast quarter of the Northeast quarter of Section Nine (9), Township Thirty-one (31) North, Range Eight (8) East, thence running West 300 feet; thence South 150 feet; thence East 300 feet; thence North 150 feet to the place of beginning, be appraised by two disinterested and impartial appraisers and sold at private sale for not less than the appraised value. It is further ordered that William Bloom and Joseph R. Roe be and they hereby are appointed Commissioners to make sale of said real estate and that they give bond for not less than the appraised value to be approved by the Court.

IT IS FURTHER ORDERED AND ADJUDGED by the Court that from the proceeds of the sale that the costs of this action be first paid including the Commissioners' fees, and then the judgment recovered by The Farmers Loan & Trust Company in Cause Number C-68-320 in Whitley Circuit Court against Jerry N. Terman in the amount of $5060.47 together with attorney fees in the amount of $400.00 to be paid to law firm of Gates, Gates & McNagny; then the sum of $1357.83 paid to Thomas Wayne Brunner and Lucille Berniece Brunner, and the balance to be paid to the plaintiffs and defendant Jerry Terman in equal proportions and that a full and detailed report be made to this Court by the Commissioners.

BE IT FURTHER REMEMBERED that afterwards, to-wit: on the 7th day of January, before the Honorable Edward J. Meyers, Jr., Judge of said court, the following proceedings were had in said cause: C-68-320

The Court having heard the evidence in the cause herein and having read and considered the briefs filed by the parties, now finds there is due the plaintiff from the defendant, Jerry N. Terman, on the note sued upon in the complaint the sum of $5060.47, and the further sum of $400.00 as fees for the services of plaintiff's attorney and which sum the plaintiff is entitled to recover from the defendant Terman, together with its costs of this action; and the Court further finds that said sums are secured by a mortgage upon the real estate described in plaintiff's complaint and that plaintiff is entitled to have said mortgage foreclosed as against all of said defendants herein and said real estate sold as ordered in Cause Number C-68-311 in the Whitley Circuit Court.

IT IS THEREFORE ORDERED AND ADJUDGED that the plaintiff have and recover from the defendant Jerry N. Terman the sum of $5460.47 together with costs of this action.

IT IS FURTHER ORDERED that from the proceeds of the sale of said real estate, as ordered in Cause No. C-68-311, be first applied to the satisfaction of the judgment herein after the costs accrued in Cause No. C-68-311."

In Cause No. C-68-311 the plaintiffs-appellants Brunner filed their motion to correct errors, which was substantially this:

The decision of the court is contrary to the evidence, particularly in the finding that the conveyance from Brunner to Terman and Carter, nee Terman, on July 7, 1961, did not create a condition subsequent, which consideration clause reads as follows:

"As a part of the consideration for this Deed, Grantees do agree to take care of and assist the above named grantors in case they do need any aid during their respective lifetimes."

The decision of the court is contrary to the evidence, particularly the finding for defendant-appellee Terman on his cross complaint for partition.

The decision of the court is contrary to the evidence in the court's finding that plaintiffs-appellants Brunner are the

owners of an undivided one-half of said described real estate and defendant-appellee Terman is the owner of an undivided one-half of said real estate, and that the court finds that said real estate cannot be divided without damage to said property and the owners thereof.

The decision is contrary to law in that it fails to state the priority of the lien of the Bank on said real estate.

The decision is further contrary to the evidence, particularly in the finding that the court finds that the plaintiffs-appellants Brunner be awarded $1,357.83 for improvements to be paid from the proceeds of the sale, as they never requested anything as the result of this case other than the setting aside of the deed from the plaintiffs-appellants to Terman and Carter nee Terman and the quieting of title in said plaintiffs.

The decision of the court is contrary to law in the court's deciding the clause in the deed from the plaintiffs-appellants as to care and assistance did not create a condition subsequent.

The decision of the court was contrary to law in that it ordered appraisers to be appointed and a commissioner to be appointed for sale of the real estate.

The decision of the court is contrary to law in that the court decided the proceeds of said sale should go to the Bank in Cause No. C-68-320 in the amount of $5,060 with attorney fees of $400. They further contend this, in effect, granted the Bank a first lien on the real estate herein, when the Bank, as mortgagee, took the real estate subject to the condition as stated in point number one of the motion to correct errors.

The last contention is that the decision is contrary to law and reiterates the statement on the payment of $1,357.83, which was ordered to be paid to plaintiffs-appellants Brunner after the sale of the real estate.

This motion to correct errors was followed by a memorandum of 13 pages, which we will not copy nor paraphrase because of the length of the same.

In Cause No. C-68-320 the defendants-appellants Brunner timely filed a motion to correct errors for the reasons:

First, the decision of the court is contrary to the evidence, particularly the court's finding that there is due the plaintiff from the defendant Terman on the note sued on in the complaint the sum of $5,060.47 plus $400 as attorney's fees, which sum plaintiff is entitled to recover from defendant-appellee Terman, together with the costs of the action; the court further finding that said sums were secured by a mortgage on the real estate described in the complaint and plaintiff was entitled to have said mortgage foreclosed against all of the defendants and said real estate sold as ordered in Cause No. C-68-311.

The reason assigned was all the evidence in the case showed that prior to the taking of the mortgage by the Bank a deed containing a condition subsequent had been executed, delivered and recorded, which deed contained the quotation as follows:

"As a part of the consideration for this Deed, Grantees do agree to take care of and assist the above named grantors in case they do need any aid during their respective lifetimes."

The further contention is the finding was contrary to the evidence in that all parties agreed such deed did exist and was adequate notice to the mortgagee, the Bank. There is a further contention by the defendant-appellants Brunner that during their lifetime the grantees under said deed could not in any way create a mortgage on said real estate, due to the condition subsequent created in such deed.

Secondly, defendants-appellants Brunner contend that the decision is contrary to law in that the court found the first funds from the sale should be applied to the mortgage seeking to be foreclosed herein. Such decision is entirely erroneous and any lien created is second and subsequent to all the rights of the defendants Brunner. It is further complained that the

condition subsequent as stated under the first specification of the motion makes it impossible for the plaintiff-appellee Bank to become entitled to a first lien on said real estate.

Appellee Terman filed his motion to correct errors on the 9th day of March, 1971, together with a certificate of mailing by regular United States mail, a copy of said motion to all attorneys of record on March 9, 1971. The transcript contains a Xerox copy of the motion, which bears the file mark of the Clerk of the Whitley Circuit Court as of March 9, 1971, which was on a Tuesday.

The trial court had duly entered its judgment on the 7th day of January, 1971, and, pursuant to Trial Rule 59 C, which reads as follows:

"(C) When motion to correct errors must be filed. A motion to correct errors shall be filed not later than sixty (60) days after the entry of judgment."

it was incumbent upon appellee Terman to file his motion to correct errors within sixty days thereafter and a failure to do so waived the right to file them and barred his right to appeal his cause of action. He had filed his motion to correct errors on the sixty-first day.

This late filing being jurisdictional, this court has no right or authority to consider any errors attempted to be raised in the untimely motion to correct errors.

Our first duty herein is to determine whether the clause in the deed:

"As a part of the consideration for this Deed, Grantees do agree to take care of and assist the above named grantors in case they do need any aid during their respective lifetimes."

is a condition subsequent or is a covenant.

On this question, the court has noted with great interest that appellants Brunner and appellee Bank have each cited many of the same cases in their briefs, with each party giving

the cases a different construction, favorable to themselves or itself.

Appellants Brunner cite and rely on the case of *Deckard* v. *Kleindorfer* (1940), 108 Ind. App. 485, 29 N. E. 2d 997. This action was brought to set aside a deed of conveyance and quiet title to land formerly owned by the plaintiff and conveyed by her to the defendants. The complaint therein alleged plaintiff-appellant at that time was a widow, 78 years of age, feeble in mind and body, and easily susceptible to the influence and persuasion of others. She further alleged that the defendant-appellee, Kleindorfer, was her nephew, whom she had reared in her own home from early childhood and for whom she entertained a mother's love and affection. The complaint further alleged that Kleindorfer and his wife persuaded and induced plaintiff-appellant to deed to them her home, consisting of 40 acres, and they, as a consideration therefor, would keep and support the appellant in her home so long as she might live. Plaintiff averred that she relied upon said promises and was persuaded to and did convey said real estate without consideration to the defendants-appellees and further alleged that subsequent to the conveyance the appellees had wholly failed and refused to support her or contribute to her support, and she was forced to leave her home and for such reason the conveyance wholly failed.

A second paragraph of complaint alleged that the real estate was worth $3,000 and that such conveyance left her entirely destitute.

The third paragraph of complaint proceeded upon the theory of constructive fraud.

The trial court found against the plaintiff and for the defendants. The evidence showed that the defendant had moved in with the plaintiff, together with his father and other children when he was a small boy after plaintiff's husband's death; thereafter the defendant's father remarried and the defendant remained in the home of the plaintiff, who provided for him and sent him to school.

Defendant left plaintiff's home and taught school in Virginia. In September, 1929, the plaintiff executed a deed to defendant for the real estate involved, which deed contained the following provision:

> "The grantor herein reserves unto herself a life estate in said real estate for and during her natural life. As a consideration of this deed, the grantee herein agrees that he will pay all taxes on said premises and that he will furnish the grantor with such food, clothing, and medical attention as is necessary for her care, support, and comfort during her natural life."

The deed was delivered to the defendant by the plaintiff, who continued in possession of the premises.

There was a controversy after the execution of the deed and on August 17, 1933, defendant-appellee reconveyed by quitclaim deed to the plaintiff-appellant the real estate described, with the deed containing the following provision:

> "The consideration for this conveyance is the release of the grantors by the grantee of any and all obligations to her."

After the latter deed was executed and delivered, the plaintiff-appellant wrote the defendants-appellees, urging that they come and visit her, which they did in July, 1934. During this visit the parties went to a lawyer in Bloomington and drew up a deed which he described as a "condition deed."

This last deed provided only that the defendant-appellee was to pay the taxes; there were no conditions for support or maintenance.

The attorney read the deed to her and asked if she understood the same, to which she replied in the affirmative. She was then asked if she understood that the deed would completely divest her of all title of the estate and when the deed was executed she would have no further interest therein, to which she answered that was the way she wanted it, stating: "I want George to have it all." The attorney testified that

as far as he was able to observe the plaintiff was in possession of all her faculties and knew and understood the nature of the transaction.

Plaintiff further continued to reside on the premises and continued to receive the rents and profits therefrom. Defendant appellee remained in Wisconsin until May, 1937, at which time he moved to the home of the plaintiff-appellant and continued to reside there until July, 1937. On or about July 6, 1937, plaintiff left the home because of mistreatment which she charged she received at the hands of defendant-appellee, which was denied by him. Shortly after this date the suit was filed. The evidence is undisputed that following the execution of the deed in question the appellant was left without any property or means of support and she was dependent upon charity after she left home.

The question presented to the court in that case was whether or not the facts stated were sufficient to support the decision of the court in refusing to set aside the conveyance. This court held:

> "The rule is well settled in this state that if the appellant was a person of sound mind when she made the deed she had a right to convey this land to her nephew for any lawful consideration or as a gift if she so desired. *Batman* v. *Snoddy* (1892), 132 Ind. 480, 32 N. E. 327."

The court further held that by the great weight of authority the test of the capacity to make a deed is that the grantor shall have sufficient mind and memory to comprehend the nature and extent of the act and to understand the nature of the business in which he is engaged and to exercise his own will with reference thereto. No greater degree of mental capacity is required than is required to make a will.

> "* * * One is not incapacitated to make and execute a deed merely because of advanced years or by reason of physical infirmities unless such age and the infirmities resulting therefrom impair one's mental facilities until he is

unable to properly, intelligently, and fairly protect and preserve his property rights. [Citing cases.]
* * *

"Our courts have further announced the rule that: 'Contracts by which aged or infirm persons convey all or a substantial part of their property to others in consideration of an agreement for support, maintenance and care during their declining years, are with practical uniformity recognized by the courts as constituting a class by themselves in matters pertaining to their interpretation and enforcement." There is in such transactions an element of confidence reposed by the old people in their grantee, sacred in its nature, a breach of which, and retention of the benefits, no court should tolerate by a refinement upon technical rules and principles of law. By the modern trend of authority these transactions are placed in a class by themselves, and enforced without reference to the form or phraseology of the writing by which they are expressed, or whether by the strict letter of the law a forfeiture of the estate is expressly provided for." ' *Huffman* v. *Ricketts* (1916), 60 Ind. App. 526, 532, 111 N. E. 322; *Lowman* v. *Lowman* (1938), 105 Ind. App. 102, 113, 12 N. E. (2d) 961.

"Measured by these rules, does the evidence conclusively show that the conveyance in question was in consideration for an agreement for future support of the grantor or that it was procured by fraud or undue influence on the part of the appellee or that the appellant was without mental capacity sufficient to make a deed? On the other hand, is there evidence in the record from which the trial court might reasonably infer that an irrevocable gift of this real estate was intended? If the evidence was sufficient upon which the trial court could draw the latter inference, then the judgment of the trial court must be affirmed. * * * Neither is lack of consideration alone sufficient cause for setting aside a deed. *Aldrich* v. *Amiss* (1912), 178 Ind. 303, 99 N. E. 419. Neither is a combination of age, improvidence and lack of consideration sufficient grounds for relief in equity. There must also be present some wrongful act on the part of the grantee, such as fraud, or undue influence, to warrant the setting aside of such conveyance."

There is no evidence in the record that appellants Brunner were of unsound mind. At the time of the execution of the deed to appellees Terman and Carter, nee Terman, appellant Mr. Brunner was 63 years of age and appellant Mrs. Brunner

was 53 years of age. Mr. Brunner was a carpenter, working full time and Mrs. Brunner worked as a practical nurse.

At the time of the trial Mr. Brunner was drawing Social Security, was 73 years of age, was self employed, able to work one-half day at a time and also did odd jobs, chores and puttered around. Mrs. Brunner apparently had no duties other than that of a housewife.

Mr. Brunner paid no income tax in the year previous to his testimony. The record discloses, however, that in 1967 he received $1,400 for a building in Larwell; he had two pieces of real estate in Larwell under contract, but did not know how much he was receiving on them and he and his wife had the 19 acres where they lived, which they rented to Beryl Mathias, who planted wheat, soybeans, et cetera.

Applying the test as set out in *Deckard* v. *Kleindorfer, supra,* we fail to find any condition, mental or physical, on the part of the appellants Brunner or any acts which would lead the trial court to believe they were incompetent to execute the deed to their daughter and son-in-law and there is a total lack of evidence of any act on the part of the grantees, such as fraud or undue influence, that would warrant the setting aside of such conveyance.

Further, under the holding in the *Deckard* case, Brunner had the right to make a deed to the grantees for any lawful consideration or as a gift if they so desired.

The deed showed a consideration of $1.00 and the evidence in the trial disclosed that $1.00 was paid by the defendant-appellee Terman.

The case of *Sheets* v. *Vandalia R. Co.* (1920), 74 Ind. App. 597, 127 N. E. 609, was a case wherein the appellant conveyed certain land to the railroad for a depot and the depot was to remain there for all time to come and there was to be left a strip of land of sufficient width for all business purposes adjoining the property to remain open for the public.

Some years later an elevated track was built and the depot

torn down. The action was commenced and the allegations were that the property was conveyed to appellees' predecessor in title which had been broken and the property reverted to appellants, who were heirs of the original grantor, who was then deceased.

A demurrer was sustained to each paragraph of complaint and judgment was rendered against appellants, that they take nothing.

Appellants contend that the property was conveyed upon condition and the court in that case passed on the following question: "Does said deed contain a condition subsequent, and, if so, has there been a breach of such condition?" The court, speaking further in that case, said:

"* * * The words, 'if it happen' that a thing reserved is not paid or performed, will make an estate conditional when used in a grant from the state or when used in a will, but, when used in a deed of an individual, these words do not make the title in the lands conditional. * * *"

In the deed from the Brunners to the Termans is to be noted the paragraph which appellants Brunner insist is a condition binding on the grantees thereof and contains the words ". . . in case they *do need* any aid during their respective lifetimes." (Our emphasis.) It is our opinion that since the grantors were individuals making the deed and using the words "in case they do need any aid during their respective lifetimes" does not make the title in the land conditional.

There are no further words in the deed which might be conjoined with these words and with others giving a right to re-enter or declaring a forfeiture at a specified contingency for future support and there being none the grant will not be deemed to be conditional. *Sheets* v. *Vandalia R. Co., supra.*

The case of *Huffman* v. *Rickets* (1916), 60 Ind. App. 526, 111 N. E. 322, in our opinion, should be considered in determining whether the clause was a condition subsequent.

In *Huffman,* the complaint alleged that on August 17, 1911, appellee was a widow, more than 80 years of age, in poor health and owned 49 acres of land in fee and she was dependent upon the land for her support. On that date she executed a warranty deed conveying the 49 acres to Rickets and wife, Margaret. A copy of the material parts of the deed are as follows:

"* * * for and in consideration of $4,000, the receipt whereof, is hereby acknowledged, the following described real estate in Blackford County, in the State of Indiana (describing it), subject to the conditions hereinafter set out. Grantees hereby agree to maintain and care for grantor for her natural life in manner suited to her station in life, as she may reasonably require, and pay all expenses incident to such maintenance and care, except for clothing of grantor. If grantees herein shall fail or refuse to comply with the above conditions in a reasonable manner, then this deed shall at once become null and void. * * *"

Margaret Rickets died soon after the execution of the deed and Cyrus F. Rickets became the sole owner of the title conveyed to the Rickets as tenants by the entireties and thereafter, in March, 1912, he became violently and permanently insane and was hospitalized at Richmond where he remained.

Appellant Huffman was appointed guardian of Mr. Rickets and as such guardian continued to cultivate the lands and appropriated the proceeds for their own purposes and since March 12, 1912, appellant Huffman nor any other person has complied with the conditions contained in the deed and they still refuse to comply. No person representing grantees complied with the convenants of the deed. Appellee Rickets was supported and cared for by others under no legal obligation so to do.

The court, speaking further, said a conveyance made to such a person by a desire to have that person rather than others support and care for the grantor, stated the rule which Indiana has adopted and which has heretofore been set out in this opinion, in our discussion of *Deckard* v. *Kleindorfer, supra.*

The court further stated that such a conveyance is made to such a person by a desire to have that person rather than others support and care for the grantor:

"* * * and hence courts interpret such a contract as imposing on the grantee a personal obligation not delegable or assignable to another without the consent of the ▪ grantor. The deed here was made to a son and his wife, and its language to the effect that the grantees thereby agreed to maintain and care for appellee imports such a personal obligation. [Citing cases.]

"It seems to be the settled rule in this jurisdiction that a grant of lands in consideration of an agreement for the future support of the grantor, in the absence of a stipulation to the contrary, creates in the grantee an estate on condition subsequent. [citing cases.] The rule, although not universal, prevails in most other jurisdictions."

The court discussed an Illinois case, after which the court stated that Illinois decisions are not in harmony with the spirit of our own or with the weight of authority, stating:

"* * * In Indiana, as well as in the other states, excepting Illinois, where the courts of last resort have considered contracts of this character, so far as we have been referred to their decisions by appellant, the relief is placed on the theory that the agreement to maintain will be read into the deed as a condition subsequent, and that the latter instrument will be construed as though the granting portion thereof were followed by words stating that it is made upon condition that the grantee support and maintain the grantor so long as the latter lives. Under such a construction it is apparent that whenever support and maintenance were not furnished to the grantor, no matter what occasioned the default, unless performance was excused by him, he could enforce the condition. *We have never so construed these deeds.*

"It will be observed that the Illinois court is speaking of the rule in that state in cases where conveyances are made on the mere agreement to support as the consideration therefor, rather than of cases where by the express terms of the deed, the conveyance is made on such an agreement as a condition subsequent. In the former sort of case, the decision last cited states that the conveyance may be rescinded only when from the circumstances attending the failure to

perform it may be inferred that the grantee never intended to perform, and that as a consequence the contract on the part of the grantee was fraudulent from its inception. *As indicated in the case last cited, such is not the rule in this State, nor is it the rule generally accepted."* (Our emphasis.)

The court stated that it thought there was another reason why the plaintiff was entitled to be re-vested with title:

" 'The covenants of the grantees to support and maintain the plaintiff were personal and died with them. The happening of that event put an end to the obligation. * * *'

"The contract here contemplated as a substantial part of the consideration personal services to be rendered by the grantees. It would seem apparent that on the decease of one grantee and the permanent incapacity of the other, the services contracted for being personal, the grantor could not be compelled to accept performance by their representatives and also that such representatives could not be required to perform, one grantee being deceased and the other incapacitated, as aforesaid. [Citing cases.]"

The court stated that in consideration of the complaint it had disposed of most of the points made respecting a sufficiency of the evidence. In addition to the brief facts the court has set out in this opinion, there were the additional facts that appellee Rickets went to live with other children and the house on the farm she had conveyed to Cyrus F. Rickets and wife had burned. She fell in 1913, and fractured her hip to the extent that she was unable to attend the trial.

Shortly after appellant Huffman was appointed guardian of Cyrus F. Rickets, appellee's son-in-law, at her request, asked the guardian what he proposed to do respecting appellee's support and got the response "that he did not know." The son-in-law again called on the guardian and informed him he thought the land should be in appellee Rickets' name, be used for her support, et cetera, and asked him to convey it back, which he refused to do. No steps were taken to reconvey the land. It was urged that the evidence was insufficient in that it fails to show a demand for the performance of the

condition of the deed, and that it also fails to show a re-entry for condition broken. This court held that under such circumstances demand for performance was not required and that in the court's judgment the evidence showed the equivalent of a sufficient re-entry.

In support of the trial court's finding in the case at bar that the language used in the deed was that of a covenant rather than a condition subsequent, we quote from *Brady* v. *Gregory* (1912), 49 Ind. App. 355, 97 N. E. 452, as follows:

"Courts are inclined to construe clauses in a deed as covenants rather than conditions, when the language used is capable of such construction, and where the language used is such as to leave doubt as to whether a condition or covenant was intended, the doubt should be resolved in favor of holding the clause to be a covenant and not a condition."

And, further, it is our opinion in the case at bar that the original deed was a conveyance to the grantees therein of the fee simple title to the real estate described therein without any reservations to the grantors.

For the purposes of this opinion we have grouped specifications 1 and 2 of appellants Brunners' motion to correct errors and under the authorities hereinabove referred to and cited in this opinion, have determined the quoted clause does not create a condition subsequent; that appellants Brunner conveyed a fee simple title to appellee Terman and his then wife, Carter nee Terman, and that there was no obligation to appellants as a part of the consideration of the deed upon which there was a condition for the continuance of the fee.

Specifications 3, 4 and 5 are grouped and will be treated together. The contention of appellants Brunner that the finding was erroneous in that the evidence in the cause clearly shows a fee on condition subsequent was created and that appellee Terman could do nothing until after the death of the plaintiffs-appellants Brunner and the condition was in existence and could not be obviated except by continuing perform-

ance is untenable. There is no evidence that appellee Terman did not perform; in fact, the evidence is that he did everything possible to make the home modern, have new furniture and fixtures, have an adequate supply of water from the well he had drilled and that everything was well between all the parties until appellee Terman's wife, Leola Ann Carter nee Terman, divorced him and remarried the next day. Terman was removed from the house by court order pending the divorce action.

The Termans, while married, owned the described real estate and the clause complained of in the deed has been determined to be a covenant rather than a condition subsequent and therefore the mortgage executed to the Bank created a first mortgage lien against the described premises.

Appellants Brunners' claimed error that the decision of the court is contrary to the evidence, particularly in the finding that the plaintiffs-appellants Brunner be awarded $1,357.83 for improvements to be paid from the proceeds of the sale, for the reason that plaintiffs-appellants Brunner never requested anything as a result of this case other than setting aside the deed from the plaintiffs to appellees Terman and Carter nee Terman and quieting the title in said plaintiffs, may have been well taken had appellants Brunner followed the Rules of Appellate Procedure. The Rules required the setting out in their argument under specification 5 of their motion to correct errors the appellants' contentions with respect to the issue presented, the reasons in support of the contentions, along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review. "Any error alleged in the motion to correct errors not treated as herein directed shall be deemed waived." Appellate Rule 8.3 (A) (7).

We have diligently searched the argument portion of appellants Brunners' brief and fail to find any cogent argument or citation of authority on this particular point.

As to specification 2 that the decision is contrary to law under sub-specification 1, appellants Brunner contend that the court erred in deciding that the clause in the deed to Terman and Terman, his wife (Carter), stating:

"As a part of the consideration for this Deed, Grantees do agree to take care of and assist the above named grantors in case they do need any aid during their respective lifetimes."

did not create a condition subsequent. We have heretofore determined this question adverse to the appellants Brunner and have so held that the court was correct. The deed having conveyed a fee simple title to appellee Terman and Leola Ann Carter nee Terman (then Terman's wife) was for the consideration of $1.00, which was paid and which deed was, in our opinion, a sale of said real estate from the appellants to the Termans. The greatest consideration of said deed, in our opinion, was love and affection and the desire of the Brunners to help the Termans get a start in life and to be near Mrs. Terman and the grandchildren. The attorney inserted the clause complained of without the same being requested and without the Termans being present. There was no discussion as to a reversion or that the appellees take care of the grantors. *Sheets* v. *Vandalia R. Co., supra.*

Sub-specification 2 admits the quitclaim deed of Leola Ann (Terman) Carter and her husband, Carter, to the appellants Brunner on April 22, 1968. Error is claimed in the court's finding for the defendant-appellee Terman on his cross complaint for partition. In our opinion there was no error here for the reason that appellee Terman was the owner of an undivided one-half interest as a tenant in common with the appellants Brunner and had no obligation to them under the original deed of conveyance.

Under sub-specification 3 that the decision of the court is contrary to the evidence in the court's finding that the plaintiffs were the owner of an undivided one-half interest in the

described real estate and the appellee Terman was the owner of an undivided one-half interest in the described real estate and the property could not be divided without damage to the property and the owners thereof; these parties were tenants in common and this was a house on .9 acre of ground. There was sufficient evidence for the court to find that the property could not be divided without damage to the property and the owners thereof. This specification of error is untenable.

Sub-specification 4 is that the decision is contrary to law for the reason that appellee Terman and his then wife mortgaged said real estate to the Bank and said mortgage was a lien upon said real estate. The appellants' complaint is that it fails to state the priority of the lien and claims that it could only be second and subsequent to the rights of the appellants herein. We have heretofore discussed the ownership of this property and there is no merit to the contention.

Specifications 2, 3 and 4 will be treated together, as they are that the court erred in ordering appraisers be appointed to sell the real estate. The parties owning this in fee simple and it being impossible to divide the property without damage to the same, and the parties, the court had no alternative other than to order a partition and appoint appraisers.

The Bank, in Cause C-68-320, had its mortgage foreclosed and the same was a prior lien and they were awarded $5,060 as their indebtedness and the attorney fee awarded the Bank's attorney was $400.

There is no merit to the contention that the Bank did not have the first lien for the reasons heretofore stated in this opinion.

The fourth and last contention that the court erred in ordering $1,357.83 be paid by the Commissioner to appellants Brunner has heretofore been disposed of and presents no question of error to the court.

This court recognizes that this opinion has been made quite lengthy by the discussion of and by hereinabove setting out

two cases together with the facts. This was done for the specific purpose of clarifying the distinction between a condition subsequent in a deed and a covenant

The greater weight of authority is that before a clause in a deed, whereby the grantee is to care for and look after the grantor as a consideration for the deed, can be considered to be a condition subsequent there must be: (1) a meeting of the minds between grantor and grantee; that (2) the grantor must expect and have belief that the grantee will so care for the grantor, and (3) the grantee must take the deed knowing full well that he is obligated to furnish the care and keep or other consideration, if any, to the grantor to a specified time or until a specific occurrence takes place; (4) words in the deed must not be ambiguous; (5) the deed must be made in good faith and without coercion or duress. The distinction is in most cases always that the grantor is an elderly person and the land conveyed is for the purpose of the grantor's care and keep, medical and surgical expense, and usually, funeral bill by the grantee. The support and maintenance, et cetera, must be a substantial part, or practically all, of the grantor's means of support in their declining years.

Without these requirements the courts in Indiana follow the rule that a condition subsequent has not been created.

This court will not weigh the evidence but after having carefully considered the evidence and the facts, we are of the opinion that there was sufficient evidence for the court to make the findings and orders which it did and that it was correct in so doing.

Finding no reversible error the judgment herein is in all things affirmed.

Sullivan, P. J., Buchanan and Robertson, JJ., concur.

NOTE.—Reported in 275 N. E. 2d 553.