**Roberta FISCHER–MARSH,**
**Appellant–Plaintiff,**

**v.**

**Scott FISCHER and Rebecca Fischer,**
**Appellees–Defendants.**

**No. 46A03–0406–CV–267.**

Court of Appeals of Indiana.

Feb. 25, 2005.

James O. McDonald, Everett Everett & McDonald, Terre Haute, IN, Attorney for Appellant.

Donald E. Baugher, Osborn Baugher Roule & Johnson, LaPorte, IN, Attorney for Appellees.

## OPINION

SHARPNACK, Judge.

Roberta Fischer–Marsh ("Marsh") appeals the trial court's judgment in favor of Scott and Rebecca Fischer ("the Fischers") on Marsh's complaint. Marsh raises

one issue, which we restate as whether the trial court's judgment that Marsh did not establish that she was entitled to rescission of her sale of property to the Fischers was contrary to law. We affirm.[1]

The relevant facts follow. Marsh and her first husband, Leonard Fischer, owned a farm in LaPorte County consisting of a farmhouse and 215 acres of farmland. Marsh and Leonard had five children, Scott, Mark, Dianne, Julie, and Gregg. Scott and Mark assisted them with the farming operations, and Scott and his wife, Rebecca, lived on an adjoining piece of property.

In 1986, Marsh and Leonard decided to bid for a dairy buyout program and stopped their dairy operations. A short time later, Leonard died, and Marsh became the sole owner of the farm. Mark obtained other employment, but Scott was unable to find a new job and asked to continue farming with Marsh. This relationship continued until 1996, when Marsh was sixty-five years old. At that time, the farm, farmhouse, and improvements were valued at $474,260. In an effort to keep the farm from being sold upon her death and to perform estate planning, Marsh decided to sell the farm and farmhouse to the Fischers. In April 1996, the Fischers purchased the farm and farmhouse from Marsh for $100,000. The deed transferring the property listed no restrictions or conditions. Marsh later sent a letter to her other children stating that Marsh

would have "a lifetime residency, all utilities, electric, heating oil & taxes paid by Scott. And lifetime medical care and final burial expenses." Appellant's Appendix at 349–350. The Fischers do not dispute that they agreed to provide Marsh with these items;[2] however, they dispute that these items were part of the real estate purchase.

Marsh continued to live in the farmhouse and started dating Hank Marsh. The relationship between Marsh and the Fischers remained friendly until 1998. Although it is unclear from the record exactly what precipitated the conflict that began in 1998, it apparently concerned the Fischers' acrimonious relationship with Hank and the Fischers' desire to trade homes with Marsh. In June or July of 1998, Marsh announced that she was going to marry Hank, and a few months later, the Fischers told Marsh that Hank would not be allowed to live in the farmhouse. Marsh apparently stopped sleeping at the farmhouse but went there daily, and she married Hank in December 1998.

On January 7, 1999, Marsh's attorney sent the Fischers a letter that provided, in part:

> [Marsh] tells me that as part of the consideration involved with the sale of the farm to you was an agreement that she was to be able to continue to reside in the [farmhouse]. I have been advised that in addition to the right to continue

---

1. Marsh filed a motion to strike the Fischers' brief due to violations of the Ind. Appellate Rules. Although the Fischers' brief does contain some violations of the appellate rules, the violations are not so substantial as to impede our consideration of the appeal. Consequently, we deny Marsh's motion to strike. Moreover, we note that rather than focusing upon the relevant law and facts and providing cogent arguments, both parties resort to a substantial amount of mudslinging in their briefs and raise facts not relevant for our consider-

ation of the issue on appeal. We remind counsel that Ind. Appellate Rule 46 requires that arguments be "supported by cogent reasoning" and that the facts should be "relevant to the issues presented for review."

2. According to the Fischers, the lifetime medical care consisted of them agreeing to allow Marsh to live with them if her health deteriorated but they did not agree to provide medical insurance.

to reside in that home, there were other agreements regarding the property taxes, maintenance and insurance on that home along with medical care if necessary for your mother.

I spoke with your mother a day or so ago, and she is concerned that since her remarriage, that you do not intend to keep the agreements that had been reached at the time of the sale. She tells me that she intends to move elsewhere, but that it will take some time for this to happen. If things go as planned, she would be able to vacate the [farmhouse] within a year.

Plaintiff's Exhibit 5 at 102.

On January 11, 1999, the Fischers responded to the letter from Marsh's attorney and expressed their concern regarding Hank's "combative behavior and attitude" and "intimidating tactics." Plaintiff's Exhibit 4 at 100. The Fischers again stated that they could not allow Hank to reside at the farmhouse. Further, the Fischers stated that "[s]ince [Marsh] voluntarily moved out, and this is not her primary residence, we feel it would be fair to all parties concerned to move her personal items out within 90 days." *Id.* The relationship between the Fischers and Marsh continued to deteriorate to the point that in June 1999, the Fischers informed Marsh that they would be disconnecting the telephone to the farmhouse, changing the locks, placing her possessions in storage, and barring her from holding family gatherings at the farmhouse.

In June 1999, Marsh filed a complaint against the Fischers alleging that she had transferred the property to the Fischers in exchange for $100,000.00 and "a lifetime residence in the farm house situated on said property with [the Fischers] to pay all utilities, electric, heating oil and taxes as well as provide [Marsh] with lifetime medical care and final burial expenses," and that the Fischers had breached the contract. Appellant's Appendix at 13. Marsh requested rescission of the parties' agreement and an accounting of farm profits and proceeds. Marsh also alleged that she had loaned $30,000 to the Fischers but they had failed to repay the loan, that she owned the farm equipment and tools, and that she was entitled to attorney fees. Marsh also requested preliminary and permanent injunctions against the Fischers to prevent them from removing her or her possessions from the farmhouse.

The trial court granted Marsh's request for a preliminary injunction, and the preliminary injunction provided:

[T]he parties stipulate to the entry of a Temporary Restraining Order granting exclusive possession and occupancy of the dwelling house, the porch, the contents therein, and the area immediately surrounding the house, located at 2262 North Fail Road, LaPorte, Indiana, to [Marsh]; and that the [Fischers] are granted possession of all farm machinery and equipment and remaining farm property and are permitted to continue normal farming operations thereon and both parties are hereby restrained from the disposition of any real or personal property without either court order or written consent of the opposing party.

Appellant's Appendix at 21A.

Marsh filed a motion for partial summary judgment, which the trial court granted but later vacated. Marsh appealed the trial court's order, and we affirmed the trial court's decision to set aside the partial summary judgment order. *See Fischer–Marsh v. Fischer,* No. 46A03–0104–CV–132, 763 N.E.2d 3 (Ind.Ct.App. Jan.16, 2002), *trans. denied.* Following the appeal, both parties filed motions for summary judgment, which the trial court denied.

The trial court held a three-day bench trial in March 2004. During her opening statement, Marsh argued that the evidence demonstrated constructive fraud if not actual fraud. After Marsh rested her case, the Fischers moved for judgment on the evidence on Marsh's claim of actual or constructive fraud. The trial court granted the motion after it found no mention of actual or constructive fraud in Marsh's complaint and found that no evidence had been "submitted to support the theory of fraud, actual or constructive." Transcript at 209.

After the bench trial, the trial court entered the following order:

\* \* \* \* \*

2. [Marsh] concedes that her claim for the farm equipment in Count III of her complaint should be denied.

3. [Marsh's] remaining claim is in two parts: 1) that the deed to the farmhouse and property consisting of two hundred fifteen (215) acres of farmland be rescinded, and; 2) that the balance of the $30,000.00 promissory note signed by the [Fischers] be satisfied.

4. Concerning rescission of the [Fischers'] deed in Count 1 of [Marsh's] claim and regarding the $30,000.00 promissory note as set forth in Count II of [Marsh's] claim, the Court finds that the preponderance of the evidence does not support those claims.

5. The court finds in the interest of justice and particularly because of the mother-son relationship of [Marsh] and Scott Fischer that the preliminary injunction entered by this court on June 11, 1999, is now made permanent.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that [Marsh] take nothing by way of her complaint. Costs versus plaintiff.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the court's preliminary injunction is now made permanent.

Appellant's Appendix at 9–10.

The issue is whether the trial court's judgment that Marsh did not establish that she was entitled to rescission of her sale of property to the Fischers was contrary to law.[3] Because Marsh appeals from a negative judgment, she must demonstrate that the trial court's judgment is contrary to law. *Infinity Prod., Inc. v. Quandt,* 810 N.E.2d 1028, 1031–1032 (Ind. 2004). A judgment is contrary to law only if the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. *Id.* at 1032. In conducting our review, we cannot reweigh the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains any supporting evidence or inferences. *Id.*

According to Marsh, she sold the farm to the Fischers for $100,000 and, in exchange, the Fischers agreed to provide her with a lifetime residency at the farmhouse and with lifetime medical care and pay for all utilities, electricity, heating oil, taxes, and final burial expenses. Marsh argues that she is entitled to rescission of the agreement because the Fischers failed to provide her with lifetime residency in the farmhouse, failed to provide her with lifetime medical care, and failed to pay the maintenance and utilities at the farmhouse.

---

**3.** Marsh does not appeal the trial court's findings regarding the farm equipment or the $30,000 promissory note.

We begin by noting that a rescission of a contract is within the sound discretion of the trial court. *Barrington Mgmt. Co., Inc. v. Paul E. Draper Family Ltd. P'ship*, 695 N.E.2d 135, 141 (Ind.Ct. App.1998). The party seeking to rescind a contract bears the burden of proving his right to rescission and his ability to return any property received under the contract. *Id.* A decree of rescission may be rendered where the party seeking rescission is not in default and the defaulting party can be restored to the same condition he occupied before the making of the contract. *Id.* However, rescission of a contract is not automatically available. *Id.* If a breach of the contract is a material one that goes to the heart of the contract, rescission may be the proper remedy. *Id.*

Marsh contends that she is entitled to rescission because the lifetime residency, lifetime medical care, and payment of the various expenses were "conditions subsequent" to the grant of the deed to the Fischers. Appellant's Brief at 10–11. "A condition subsequent is a condition which, if performed or violated (as the case may be), defeats the contract." *Barrington*, 695 N.E.2d at 141; *see also Pittman v. Max H. Smith Farms, Inc.*, 506 N.E.2d 1139, 1142 (Ind.Ct.App.1987) ("Conditions subsequent are conditions operating upon an estate conveyed and render it liable to be defeated for breach of such conditions in which event the estate conveyed reverts to the grantor."), *reh'g denied, trans. denied.* Conditions subsequent are not favored in law and are construed strictly because they tend to destroy estates. *Fed. Land Bank of Louisville v. Luckenbill*, 213 Ind. 616, 620, 13 N.E.2d 531, 533 (1938).

In general, although a deed need not "in express terms state that it is upon condition," it must "plainly appear[ ] from the words used that the intent was to create such an estate." *Jancovech v. Christensen*, 100 Ind.App. 299, 302, 195 N.E. 287, 288 (1935). Further, in *Brunner v. Terman*, 150 Ind.App. 139, 162, 275 N.E.2d 553, 566 (1971), this court held:

> The greater weight of authority is that before a clause in a deed, whereby the grantee is to care for and look after the grantor as a consideration for the deed, can be considered to be a condition subsequent there must be: (1) a meeting of the minds between grantor and grantee; that (2) the grantor must expect and have belief that the grantee will so care for the grantor, and (3) the grantee must take the deed knowing full well that he is obligated to furnish the care and keep or other consideration, if any, to the grantor to a specified time or until a specific occurrence takes place; (4) words in the deed must not be ambiguous; (5) the deed must be made in good faith and without coercion or duress.

In support of her argument that a condition subsequent was created, Marsh relies upon a line of cases holding:

> There can be no question but that the agreement to care for the appellant "as a member of their family * * * in sickness and in health and all with kindness and consideration and all so long as said grantor shall live", which was stated as a consideration for the deed in question, created a condition subsequent so long as such contract for support remained executory, as it is well settled that a grant of land in consideration of an agreement for the future support of the grantor, in the absence of a stipulation to the contrary, creates in the grantee an estate on the condition subsequent. Such contracts, in which aged and infirm persons convey their property to others in consideration of an agreement for support, maintenance, and care, are al-

most universally recognized by the courts as constituting a class by themselves in matters pertaining to their construction and interpretation, and, as has been reiterated in several decisions, until such contract is fully performed on both sides it is liable to be rescinded and the property reclaimed, leaving the parties to their remedies respectively for what may have been furnished under the contract.

*Tibbetts v. Krall,* 128 Ind.App. 215, 222, 145 N.E.2d 577, 581 (1957) (internal citations omitted); *see also Owens v. Downs,* 121 Ind.App. 294, 300, 98 N.E.2d 914, 917 (1951); *Dowell v. Jolly,* 130 Ind.App. 280, 288, 159 N.E.2d 590, 594 (1959). For example, in *Tibbetts,* Tibbetts executed a deed to her house and farm in favor of the Kralls, and the deed contained the following provision:

> This conveyance is made upon consideration that the grantees move into the dwelling house on said land and reside therein with grantor and provide a home therein for grantor as a member of their family and care for her in sickness and in health and all with kindness and consideration and all so long as said grantor shall live. Not however to provide nurse hire or Physician or medicines or wearing apparel. And grantees also to keep all taxes on said land paid and the improvements insured and in reasonable repair.

*Tibbetts,* 128 Ind.App. at 220, 145 N.E.2d at 580. Tibbetts ultimately left the farm and demanded that the Kralls reconvey the house and farm to her. *Id.* at 222–223, 145 N.E.2d at 581. When the Kralls re-fused, Tibbetts filed an action requesting the cancellation of the deed, possession of the property, and an accounting. *Id.* at 216, 145 N.E.2d at 578. The trial court found that the Kralls had fully performed the conditions and that Tibbetts was not entitled to cancellation of the deed.[4] *Id.* at 218, 145 N.E.2d at 579.

On appeal, this court held that the provision in the deed created a condition subsequent and, even though Tibbetts voluntarily left the property, "there was no performance of the conditions subsequent in the deed for a long period of time...." *Id.* at 222, 145 N.E.2d at 581. Thus, this court held that Tibbetts was "entitled to a reconveyance of such real estate," but the Kralls were entitled to reimbursement for the support and maintenance during the short periods of time that Tibbetts lived with them. *Id.* at 225, 145 N.E.2d at 582.

Here, the deed executed by Marsh transferring property to the Fischers contained no provisions regarding lifetime residency at the farmhouse, lifetime medical care, and payment of the miscellaneous expenses. Thus, unlike *Tibbetts,* the deed itself contains no condition subsequent. Rather, we find this case more comparable to *Schrenker v. Grimshaw,* 124 Ind.App. 493, 119 N.E.2d 432 (1954). There, Grimshaw frequently visited Olive Pontzious, whom she had known for fifty years, and, on the visits, often brought food and performed small services for Pontzious. *Id.* at 499–500, 119 N.E.2d at 435. Pontzious executed a deed transferring her property to Grimshaw "in consideration of love, affection and services formerly rendered"

---

4. Tibbetts conveyed two pieces of property to the Kralls. *Tibbetts,* 128 Ind.App. at 216, 145 N.E.2d at 578. The first piece of property consisted of the house and 29 3/4 acres of farmland, and the second piece of property consisted of 21.65 acres of farmland. *Id.* The trial court found for Tibbetts on the second piece of property and ordered cancellation of the deed and an accounting. *Id.* However, the trial court found for the Kralls on the first piece of property, and the appeal concerned the first piece of property only. *Id.* at 218, 145 N.E.2d at 579.

but reserving a life estate. *Id.* at 495–496, 119 N.E.2d at 433–434. Pontzious later demanded a reconveyance of the property and alleged that "she executed said deed in consideration of a collateral oral contract between herself and [Grimshaw], whereby said Grimshaw agreed to nurse her, support and comfort her, be her companion and, in general, take care of her for the remainder of her life and pay her funeral expenses upon her death." *Id.* at 496, 119 N.E.2d at 434.

Pontzious brought an action against Grimshaw seeking cancellation of the deed, and the trial court found for Grimshaw. *Id.* at 497, 119 N.E.2d at 434. On appeal, this court agreed and held:

> The contract for support and maintenance, upon which [the estate] relies as a condition subsequent entitling [Pontzious] to rescind at any time before full performance, was not incorporated in the deed nor is it evidenced by any other written instrument. The court evidently found that the parties made no such contract and that the deed was executed for the consideration therein stated, viz.: past services, love and affection. In other words, the deed was purely voluntary and not given in consideration of any promise or payment of money or anything of monetary value.

*Id.* at 499, 119 N.E.2d at 435. Thus, this court held that no contract for support existed, and Pontzious's estate was not entitled to rescission of the deed. *Id.* at 500, 119 N.E.2d at 436.

Similarly, here, Marsh alleges that the Fischers agreed to provide her with a lifetime residency at the farmhouse and lifetime medical care, pay for all utilities, electricity, heating oil, taxes, and final burial expenses in partial consideration for executing the deed. However, as in *Schrenker*, the alleged oral agreement was not incorporated into the deed or any other written agreement between the parties.

Although the Fischers do not deny that they agreed to provide Marsh with a lifetime residency at the farmhouse and lifetime medical care and pay for all utilities, electricity, heating oil, taxes, and final burial expenses, they contend that these agreements were separate from transfer of the property and were not consideration for the execution of the deed.[5] By finding that Marsh was not entitled to rescission, the trial court implicitly found that Marsh failed to prove the deed was subject to a condition subsequent. Specifically, Marsh failed to show a meeting of the minds between herself and the Fischers and failed to show that the Fischers took the deed "knowing full well" that they were taking the deed subject to certain obligations to Marsh. *Brunner*, 150 Ind.App. at 162, 275 N.E.2d at 566. Marsh's request that we find the agreements to provide her with lifetime residency at the farmhouse, lifetime medical care and payment for all utilities, electricity, heating oil, taxes, and burial expenses were consideration for the transfer of the property is a request that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *Infinity Prod.*, 810 N.E.2d at 1032. The oral agreements do not constitute conditions subsequent to the deed, and, thus, the trial court's finding

---

**5.** Marsh argues that the Fischers' testimony on this subject was inconsistent with their response to requests for admissions and their deposition testimony. The Fischers argue that their responses were not inconsistent and that Marsh had every opportunity to cross-examine them during the trial. We agree. Our review of the Fischers' responses to the requests for admission and their deposition testimony reveals that the questions and answers were not clearly inconsistent with their trial testimony. The trial court was entitled to consider this issue in determining the credibility of the parties.

that Marsh is not entitled to rescission of the deed is not contrary to law.[6]

Marsh also argues that the trial court's order is inconsistent and contrary to law because it denies her request for rescission but makes the preliminary injunction permanent. When the trial court made the preliminary injunction, which gave Marsh possession and occupancy of the farmhouse, permanent, the trial court in effect gave Marsh a life estate in the farmhouse. This finding is not inconsistent with the trial court's finding that Marsh was not entitled to rescission of the deed. The Fischers do not dispute that they gave Marsh a lifetime residency in the farmhouse. The trial court apparently concluded that there was an agreement to provide Marsh with a lifetime residence at the farmhouse but that the lifetime residency was not a condition subsequent to Marsh's transfer of the farm to the Fischers.[7] We cannot say that the trial court's finding is contrary to law.

For the foregoing reasons, we affirm the trial court's judgment denying Marsh's re-

quest for rescission of the deed but making the preliminary injunction permanent.

Affirmed.

BAKER, J. and FRIEDLANDER, J. concur.

---

6. Marsh also makes a claim for quantum meruit because the Fischers "had been unjustly enriched by keeping the proceeds of the farming operations conducted on her farm since 1996" and quantum meruit "applies absent the existence of a written agreement." Appellant's Brief at 24 (relying upon *Humphrey v. Johnson*, 73 Ind.App. 551, 127 N.E. 819 (1920)). We find Marsh's argument unclear. If Marsh is referring to her request for an accounting, such an accounting would be appropriate if the trial court had granted rescission. However, Marsh's claim for rescission fails because she has failed to show a connection between the execution of the deed and the other agreements. As a result, Marsh is not entitled to an accounting.

If Marsh is attempting to argue that she is entitled to rescission of the deed even though no written agreement exists, she again requests that we find a connection between the execution of the deed and the other agreements. To do so, we would have to reweigh the evidence and judge the credibility of the

witnesses, which we cannot do. *Infinity Prod.*, 810 N.E.2d at 1032. Further, as previously noted, rescission may be proper if the breach of the contract is a material one that goes to the heart of the contract. *Barrington*, 695 N.E.2d at 141. By failing to prove a connection between the execution of the deed and the other agreements, Marsh has failed to demonstrate that she is entitled to rescission. We express no opinion as to whether Marsh would be entitled to rescission of the deed even though no written agreement exists if she had demonstrated a connection between the deed and the oral agreements.

7. Marsh makes no claim that the trial court's order is contrary to law because it failed to make any findings regarding the remaining alleged agreements between Marsh and the Fischers, i.e., lifetime medical care and payment for final burial expenses, utilities, electricity, heating oil and taxes.